# Richmond

COMMONWEALTH OF VIRGINIA, EX REL. &C. V.

ALEXANDRIA WATER COMPANY, A CORPORATION.

June 18, 1951.

Record No. 3839.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan, Miller and Whittle, JJ.

The opinion states the case.

*A. Lincoln Green,* for the appellants.

*Gardner L. Boothe,* for the appellee.

WHITTLE, J., delivered the opinion of the court.

This matter is before us upon the petition of Commonwealth of Virginia, at the relation of A. Lincoln Green and Home Lands Development Corporation. An appeal as of right was awarded from an order entered by the State Corporation Commission on July 31, 1950, in a proceeding wherein petitioners were plaintiffs and Alexandria Water Company, a corporation, was defendant.

Green purchased a tract of several acres of land near the western boundary of the present city limits of Alexandria. This he proposed to develop into residential lots. After acquiring the property he formed a corporation under the name of Home Lands Development Corporation, which now holds title to the land. This tract has been in possession of plaintiffs since 1946 and has never been developed, although one lot has been sold off at a net price of $4,000.

Plaintiffs, in their petition, allege that it is the duty of the defendant, Alexandria Water Company, by virtue of the provisions of section 56-261, Code of 1950, to furnish an adequate supply of water at reasonable rates and charges. They pray that the defendant company, pursuant to sections 12-14 and 56-6 of the 1950 Code, be compelled to discharge the public duties owed by it to plaintiffs, and cease the practice of collecting deposits from users of water within the corporate limits of the City of Alexandria, and particularly along Key Drive in said city, which drive borders plaintiffs' property. Plaintiffs also insist that the defendant company be directed to extend its lines along

Key Drive, without the deposit required of plaintiffs by State Corporation Commission's Rule No. 4.

Plaintiffs' property is located in the recently annexed territory near the western boundary of the city limits. The tract of land is shown in detail on Exhibit No. 3. The boundary on the south is Key Drive, with the western boundary of the tract approximately one thousand feet from Quaker Lane. The west side of Quaker Lane is approximately the present city limits. The plaintiffs propose to develop this land at some time in the future, by cutting it into thirteen building lots. According to Exhibit No. 3, four of these lots will face on Key Drive and nine on Marshall Lane. Marshall Lane extends north from Key Drive and, if and when built, it will cut the tract into two sections.

The plaintiffs contend that Rule No. 4 is unreasonable and should be declared to be of no effect since "No notice was given to the public before its promulgation on May 1, 1940." The rule reads as follows:

"Rules Covering Extension of Mains for General Service in the City of Alexandria, Virginia, and in Adjacent Territories Supplied by the Company in Arlington and Fairfax Counties, Virginia.

"*Extension of Mains:*

"The Company will extend its distribution system to supply consumers, where application for service has been made, under the following terms and conditions:

"(a) Where the cost of the extension does not exceed four and one-quarter times the estimated normal annual revenue from *bona fide* applicants whose service pipes will be directly connected to the extension and from whom the company has received applications for service upon forms provided by the company for this purpose, the company will install, at its own cost and expense, the necessary extension.

"(b) Where the cost of making an extension exceeds four and one-quarter times the estimated normal annual revenue, the applicant or applicants shall deposit with the company the excess cost of the extension, that is, the difference between the estimated cost of the extension and four and one-quarter times the estimated normal annual revenue from the applicant or applicants and other persons whose applications are received on or before the work of making the extension has begun.

"Any deposit so made shall remain without interest, in the possession of the company, subject to refunds as follows:

"After the completion of the extension when and as additional *bona fide* consumers are secured whose service lines are directly connected to such extension, the company will refund to the original depositor or depositors an amount equal to four and one-quarter times the estimated annual normal revenue from such additional consumers. Refunds will be made for a period of ten years only from date of original deposit, and the total of such refunds will in no event exceed the amount of the original deposit. All or any part of the deposit not refunded within said ten year period shall remain the property of the company.

"The ownership of the extensions installed under this rule shall at all times be in the company, its successors and assigns."

Commissioner Hooker, who delivered the unanimous opinion for the commmission, demonstrates how Rule No. 4 will apply in the instant case. We quote from his opinion as follows:

"The area bordering on Key Drive in this section of the City of Alexandria has not been developed, up to this time, there being only four lots on Key Drive on which houses have been built. It is understood from the testimony that other houses are planned to be constructed on Key Drive in the future.

"The company has a distribution main on Quaker Lane, and future service to consumers on Key Drive will be supplied by an extension from Quaker Lane east on Key Drive. In July, 1949, when Mr. Green first consulted the company (Exhibit No. 8) for water service, he was advised that an extension of approximately 1,050 feet on Key Drive would be required to render service to the house which he proposed to erect on this property. Under the extension plan this would have required a deposit of approximately $3,000 at that time (Exhibit No. 10). However, due to a decrease in the cost of construction from 1949 to the date of the hearing, the cost was estimated at $2,381.49 as of the date of hearing (Transcript, Page 52, Line 4.)

"A short time prior to this hearing Mr. Fred Erhard, who has constructed a house on Lot 13 on the south side of Key Drive, and six other lot owners along Key Drive, signed an extension contract for a water line to extend east on Key Drive along Quaker Lane approximately 650 feet. When this line is constructed an extension of only 450 feet will be needed to supply service to the lot on which Mr. Green proposes to build. This

latter extension is estimated to cost $916.83 (Trans., Page 61, Line 14).

"On the basis of this estimate the complainants in this case are requesting that the company invest $916.83 in additional distribution mains, exclusive of the present investment in source of supply plant, purification plant, pumping plant, storage plant, and transmission main, for a present additional estimated gross annual revenue of $26.49. This estimated gross annual revenue is equivalent to 2.89% on the estimated cost of the estimated investment in distribution mains only. The Company estimates that the annual gross revenue should be equal to approximately 23.5% (equivalent to the four and one-quarter times the annual revenue in the extension plan) of the cost of the distribution mains alone if the project is to be self-supporting.

"Under the extension plan Mr. Green would be refunded four and one-quarter times $26.49, the average annual revenue from this class of consumer, or approximately $112.58 immediately upon connection of service to his house. He would also be refunded approximately $112.58 as each additional lot along Key Drive between Mr. Erhard's property and his lot is developed and connected for service within a ten year period. Exhibit No. 3 indicates that there are possible locations for three consumers on the north side of Key Drive. The south side of Key Drive at this location has not been subdivided, but space is available for three or four building lots on this side of the Drive. Assuming that four lots are subdivided and developed on the south side of Key Drive between Mr. Erhard's lot and opposite Mr. Green's property, and that three lots on the north side of Key Drive are developed, all seven lots obtaining water service within a ten year period, then Mr. Green will be refunded $900.64 of the $916.83 which the extension is now estimated to cost."

The commission finds as a fact that the rule gave more favorable terms and conditions for extensions to customers than had the previous rules, and the revision gave no increases, therefore the rules were permitted to become effective without notice to the public. Section 56-40 of the 1950 Code provides as follows:

"*Reduction of Rates and Charges.*—The State Corporation Commission, in the exercise of its discretion, may permit any public utility corporation to put into effect any proposed revision of its rate schedules, or any part thereof, without notice when the proposed revision effects no increases."

■ It is manifest in this case that the plaintiffs have made no real effort to develop the property acquired by them in 1946. If plaintiffs could force the defendant water company to install the six inch line to their property, it is conceivable that the pipe line may remain idle for years to come with little, if any, revenue flowing to the defendant on its investment. If it were not for this rule, or some other reasonable regulation, property owners within the wide limits of Alexandria could demand that this company lay water pipes to property with no guarantee that prospective users of water would be available. The practice conceivably could be carried to such an extreme that the finances of the company would become so impaired as to make it impossible for the company to serve the public needs as is required by law.

We think the rule is fair and just, and that the commission was right in so holding. The decision of the commission is therefore

*Affirmed.*