STATE OF NEW JERSEY, BY DAVID D. FURMAN, ATTOR-
NEY GENERAL, PLAINTIFF-APPELLANT AND CROSS-
RESPONDENT, v. ELIZABETHTOWN WATER COMPANY,
A NEW JERSEY CORPORATION (SUCCESSOR BY CON-
SOLIDATION TO PLAINFIELD-UNION WATER COM-
PANY AND ELIZABETHTOWN WATER COMPANY CON-
SOLIDATED), DEFENDANT-RESPONDENT AND CROSS-
APPELLANT.

Argued April 22, 1963—Decided June 3, 1963.

*Mr. William M. Feinberg* argued the cause for plaintiff-appellant and cross-respondent (*Mr. Charles J. Kehoe* and *Mr. H. Douglas Stine,* of counsel; *Mr. William M. Feinberg* and *Mr. Alan Goldstein,* on the brief).

*Mr. John R. Sailer* argued the cause for defendant-respondent and cross-appellant.

The opinion of the court was delivered by

JACOBS, J.   The Appellate Division, in a full opinion by Judge Kilkenny, rejected the plaintiff's appeal and the defendant's cross-appeal from judgments entered in the Chancery Division. *State v. Plainfield-Union Water Co.,* 75 *N. J. Super.* 571 (1962). We granted certification on petitions by the parties. 38 *N. J.* 498 (1962).

The State instituted custodial escheat actions against water companies which have been consolidated into the defendant

Elizabethtown Water Company. It asserted various claims and obtained judgments which are described in the Appellate Division's opinion and need not be detailed here. The State's appeal before us is confined entirely to an attack on the refusal of the lower courts to grant its additional claim with respect to sums deposited by land developers pursuant to type C main extension agreements. See 75 *N. J. Super.*, at *pp.* 576–578. Those agreements set forth that, upon the understanding that the Water Company would extend its main at its own cost and expense, the developer would pay a stipulated sum to be returned to it without interest in the following manner:

"as houses are connected to and supplied with water from said extension, Water Company will make an estimate of the annual revenue to be derived from each house and will return to us Three and 50/100 ($3.50) for each One Dollar ($1) of such estimated revenue."

In many instances, application of the afore-mentioned formula resulted in refunds which did not exhaust the entire deposits. In such instances, the unrefunded balances were retained by the Water Company and were reflected on its books in accordance with the prescribed Uniform System of Accounts For Water Companies which provides under Account 218, designated as Customers' Advances For Construction, that when a customer receives a refund of "the entire amount to which he is entitled, according to the agreement or rule under which the advance is made, the balance, if any, remaining in the account shall be transferred to Account 219." During the course of many years the defendant's predecessors accumulated substantial amounts of such balances which were duly recorded in their accounts. In rate proceedings, the Public Utility Commission deducted these amounts from capital investment for the purpose of arriving at the base upon which reasonable return would be calculated. *Cf. Langan v. West Keansburg Water Co.*, 51 *N. J. Super.* 41, 51 (*App. Div.* 1958), certif. denied, 28 *N. J.* 56 (1958).

█ The State seeks custodial escheat of the afore-mentioned amounts remaining unclaimed for more than five years since July 13, 1945; that date was six years prior to the passage of the Custodial Escheat Act (*L.* 1951, *c.* 304) and the moneys in question were not reported thereafter as escheatable. See *N. J. S.* 2A:37–29 *et seq.; State by Parsons v. United States Steel Corp.,* 22 *N. J.* 341 (1956). The State's position is that when a development has been completed and refund has been made on the basis of $3.50 for each dollar of estimated annual revenue, any unrefunded balance belongs to the developer and if unclaimed by him for a sufficient period, is subject to escheat. On the other hand, the position of the defendant is that so long as it has made refund on the basis of $3.50 for each dollar of estimated annual revenue, it is under no further obligation under the terms of the agreement and consequently nothing is escheatable. The issue turns on the true meaning of the agreement between the parties and in this connection the State suggests that we should confine ourselves to the four corners of the written agreement without resort to the Commission's regulations or its prescribed accounting practices or other extrinsic interpretive aids. We are satisfied that the agreement is not to be so read in a vacuum but is to be read in the full light shed by all of the attendant circumstances. See *Atlantic Northern Airlines, Inc. v. Schwimmer,* 12 *N. J.* 293, 301 (1953). This course would undoubtedly be followed if the developers themselves were claiming the unrefunded balances and while escheat actions are generally not to be viewed with hostility (*State by Parsons v. United States Steel Corp., supra,* 22 *N. J.,* at *p.* 360), the State's claims are nonetheless derivative and certainly no broader than the developers' claims. See *State by Richman v. Sperry & Hutchinson Co.,* 56 *N. J. Super.* 589, 596 (*App. Div.* 1959), aff'd, 31 *N. J.* 385 (1960).

Deposit agreements in connection with the extension of utility facilities to new land developments are of long standing in our State. See *Elmora Villa, etc., Co. v. Plainfield-Union Water Co.,* 118 *N. J. Eq.* 317 (*E. & A.* 1935); Thomas,

"Public Utilities: Extension of Service," 16 *Rutgers L. Rev.* 318 (1962). *R. S.* 48:2–27 provides that the Board of Public Utility Commissioners may require an extension of facilities where, in its judgment, the extension is reasonable and practicable and will furnish sufficient business to justify the construction and maintenance of the same, and when the financial condition of the public utility reasonably warrants the original expenditure required in making and operating the extension. Under the statute, a land developer may institute a proceeding before the Public Utility Commission with a view towards compelling the utility to extend its facilities, and on a proper showing it may obtain a suitable order for the extension. See *In re Bd. of Fire Commrs., Fire Dist. No. 3, Piscataway Tp. v. Elizabethtown Water Co., Consolidated,* 27 *N. J.* 192 (1958); *In re Tp. of Lakewood v. Lakewood Water Co.,* 29 *N. J. Super.* 422 (*App. Div.* 1954); cf. *Petition of Highpoint Development Corp.,* 65 *N. J. Super.* 530 (*App. Div.* 1961), certif. denied, 34 *N. J.* 473 (1961). But the utility's obligation to extend is by no means an unconditional one for it is expressly subject to the statutory standards which, if unsatisfied, will preclude the order sought by the developer. See *Langan v. West Keansburg Water Co., supra.* To avoid the expense and delay incident to application to the Commission, along with the uncertainty of the outcome, the developer may be willing to enter into a voluntary business arrangement with the utility under which the utility's speculative risk is reduced or eliminated and the developer is enabled to proceed with knowledge of the incidental costs which will ultimately be borne by purchasers of the houses.

In 1922 such business arrangements were common but they varied in details from utility to utility. During that year a hearing was called by the Board of Public Utility Commissioners for the purpose of determining whether some standardization could be effected. In 1923 the Board announced recommended general rules and regulations which, though not strictly binding, were adopted by the utilities. The first of the rules related specifically to extensions "requested by land de-

velopment agencies." It set forth that where an application was made for extension to a newly developed tract of land, the utility could require a deposit covering the entire cost of installing the necessary main lines to serve the tract. And it provided that when the new houses abutting on the main lines were completed and occupied, "there shall be returned to the depositor an amount equal to the estimated charge for three years' service for an electrical extension, two years' service for a gas extension; and three and one-half years' service for a water extension; provided, however, that no part of the deposit remaining over ten years is to be returned." Thus it was contemplated that application of the formula set forth in the rule might not exhaust the entire deposit and that, in such event, the balance remaining upon the expiration of the ten-year period would be the property of the utility.

Mr. Winslow, who was president of the Plainfield-Union Water Company (one of the defendant's predecessors), testified that whenever a developer sought a main extension he was advised that the company would be pleased to install it under the rules governing extensions issued by the Public Utility Commission, that the company would require a deposit covering the cost of the extension, and that there would be a refund based on "estimated three and one-half times the annual revenue." He also testified that deposits were commingled with general funds and were set forth on the company's books in accordance with the Uniform System of Accounts. Over the years, various types of deposit agreements were used by the company and type C was the only developers' agreement which omitted specific reference to the ten-year period. When asked about this, Mr. Winslow testified that the ten-year provision was eliminated in the hope that its omission would persuade the Commission to alter its practice of deducting the unrefunded deposit balance from capital investment in determining the rate base; the Commission did not alter its practice and the provision was later restored. Mr. Winslow testified further that the intent of the formula was the same in all of the various types of deposit agreements and that the omission

of the ten-year provision in the type C contract merely meant that refunds could be had on the basis of three and one-half times estimated revenue, even after the ten-year period where additional houses were built on the tract following the expiration of that period. *Cf. State v. Plainfield-Union Water Co., supra,* 75 *N. J. Super.,* at *p.* 582.

In 1960 the Board of Public Utility Commissioners revised its recommended general rules and regulations relating to main extensions. It stated that the formulac being suggested by it for the extension of utility services were not to be viewed as binding but would serve as guides to customers and utilities and that the parties were still free to exercise their rights under *R. S.* 48:2–27. Although the revision embodied a more liberal formula for developers, it continued the policy of placing the burden of the speculative risks on the developer, rather than on the utility and its prior customers, by gearing the refund to annual business from the newly developed tract and providing, as thertofore, that unrefunded balances after application of the formula during the ten-year period would be the property of the utility. The pertinent paragraph of the revision reads as follows:

"The deposit shall be returned in an amount equal to 5 times the estimated annual revenue from each such completion and occupancy and from fire protection charges on said extension. If during a ten-year period from the date of the original deposit, the actual annual revenue, during any year of said ten-year period, from premises abutting upon said extension and from amounts received from the municipality for fire protection service in the case of water main extensions, shall exceed the annual revenue which was the basis for the previous deposit return, there shall be returned to the depositor an additional amount equal to 5 times such excess. In no event shall more than the original deposit be returned to the depositor nor shall any part of the deposit remaining after ten years from the date of the original deposit be returned."

See *Lake Intervale Homes, Inc. v. Parsippany-Troy Hills,* 28 *N. J.* 423, 442–443 (1958); *Petition of Highpoint Development Corp., supra,* 65 *N. J. Super.,* at *p.* 534; *cf. Commonwealth ex rel. Green v. Alexandria Water Co.,* 192 *Va.* 512, 65

*S. E. 2d* 521, 523 (1951) ; *Chandler Investment Co. v. White-haven Utility Dist.,* 44 *Tenn. App.* 1, 311 *S. W. 2d* 603, 609 (1958) ; Thomas, *supra,* 16 *Rutgers L. Rev.,* at *p.* 326.

The State does not question the history and terms of the Commission's general rules and regulations although it stresses that they were recommendatory rather than binding. Nor does it suggest that the claim on its appeal before us encompasses any instances in which the utilities did not refund an amount equivalent to three and one-half times a sum representing annual revenue from each of the houses built in the developments in question. Its contention is that, under the agreements, there was no contemplation that any balances remaining after the application of the three and one-half to one formula should become the property of the utilities. But on the record before us we cannot justly make a finding that there was no such contemplation; when the agreements are read in the light of the Commission's regulations, the prescribed accounting practices, and all of the other attendant circumstances, there may readily be an inference that such was the contemplation. That inference finds additional support in the practical interpretation by the parties; the utilities acted on the understanding that balances remaining after refunds in accordance with the three and one-half to one formula belonged to them and this understanding received some corroboration in the failure of the developers to assert further claims after receiving such refunds. *Cf. Journeymen Barbers, etc., Local* 687 *v. Pollino,* 22 *N. J.* 389, 395 (1956).

██ We are advised that there have been several instances in which developers asserted claims to balances and prevailed in summary trial proceedings which were never reviewed on appeal. We need not concern ourselves with those proceedings or the showings made there for the issue before us is whether the State's showing on the record here was legally sufficient for escheat purposes to establish that the parties contemplated by their agreements that there would be unconditional obligations to return balances remaining after application of the three and one-half to one formula. That showing rested on

the State's interpretation of the written agreements alone, was without any supporting testimony from the developers, and was met by the rebutting testimony from the utilities. We are satisfied, as were the lower courts, that the showing was insufficient to establish escheatable property within the intendment of the applicable statutory provisions. See *State v. Plainfield-Union Water Co., supra*, 75 *N. J. Super.*, at *p.* 580; *cf. State by Richman v. Sperry & Hutchinson Co., supra*, 56 *N. J. Super.*, at *p.* 596. This approach in nowise departs from *State by Parsons v. United States Steel Corp., supra*, 22 *N. J.*, at *p.* 360, which is cited by the State as favoring "a broad construction of the escheat acts." In that case, and in others where escheat was allowed, there was no question as to the validity of the original claims and the only issue was whether they were barred by the lapse of time. Here the claims were brought into substantial question and the burden was upon the State to establish them. Nothing in the Custodial Escheat Act or elsewhere suggests any purpose or reason to minimize the need for properly discharging that burden. Indeed, the situation at hand would appear to be one in which there is fair justification for invoking the doctrine voiced in *State v. United States Steel Corp.*, 12 *N. J.* 38, 47 (1953), that "any doubt as to whether property is subject to escheat is resolved against the State." *Cf. State by Richman v. Sperry & Hutchinson Co.*, 49 *N. J. Super.* 165, 173 (*Ch. Div.* 1958), aff'd, 56 *N. J. Super.* 589 (*App. Div.* 1959), aff'd, 31 *N. J.* 385 (1960); *State v. Otis Elevator Co.*, 10 *N. J.* 504, 514 (1952) (dissenting opinion), s. c. 12 *N. J.* 1 (1953).

■ On its cross-appeal, the defendant attacks the judgments rendered in the State's favor, claiming that the action of the lower courts in estopping it from relying on the statute of limitations because of its failure to report under *N. J. S.* 2A:37–42 was improper. See *State v. Plainfield-Union Water Co., supra*, 75 *N. J. Super.*, at *p.* 576. It acknowledges that its position is contrary to *State by Parsons v. United States Steel Corp., supra*, 22 *N. J.* 341, and it presumably seeks to have that case overruled. Justice Burling there

delivered an opinion for the court which dealt fully with the controlling issues. The defendant has presented nothing which persuades us to withdraw from it and it is hereby reaffirmed. See *State v. Union Bag-Camp Paper Corp.,* 35 *N. J.* 390, 393 (1961).

The defendant's brief attacks the custodial escheat award of $25 due on a 1927 bond coupon. The Appellate Division declined to interfere, pointing out that the defendant had advanced no reason in its brief or at oral argument for upsetting the trial court's determination that the sum was held in trust. See *State v. Plainfield-Union Water Co., supra,* 75 *N. J. Super.,* at *p.* 583. At oral argument before us, counsel for the defendant indicated that the matter was not being pressed and we shall, therefore, not pursue it.

Affirmed.

*For affirmance* — Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For reversal*—None.