206 N.J. Super. 487 (1985)
503 A.2d 311
WALTER WHITFIELD, PLAINTIFF-APPELLANT,
v.
J. BLACKWOOD, M.D., CHARLES TISCHLER, M.D., WILLIAM BOSS, M.D., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 22, 1985.
Decided March 25, 1985.
*488 Before ANTELL, J.H. COLEMAN and SIMPSON, JJ.
Amos Gern argued the cause for appellant (Gern, Stieber, Dunetz, Davison & Weinstein, attorneys; Amos Gern of counsel and on the brief; Allen J. Barkin on the brief).
Cynthia A. Matheke argued the cause for respondents (Budd, Larner, Kent, Gross, Picillo & Rosenbaum, attorneys; Cynthia A. Matheke of counsel and on the brief). Donald P. Jacobs on the brief.
PER CURIAM.
In this medical malpractice case, plaintiff was working as manager of Cardinal Wine and Liquors Co., Bergen Street, *489 Newark on January 29, 1979, when he was shot in the chest, abdomen and left arm with a shotgun during the course of a robbery. Plaintiff was taken to College Hospital and admitted through the emergency room. He came under the immediate care of Surgical Team A, consisting of defendants. Dr. Blackwood was the attending physician. Dr. Tischler was the chief surgical resident. Dr. Boss was the senior surgical resident. Surgery was performed on plaintiff's chest, abdomen and left arm; only the left arm is involved in this appeal.
Plaintiff instituted the present action against Doctors Blackwood, Tischler and Boss and College Hospital, a division of the College of Medicine and Dentistry of the State of New Jersey, on February 3, 1979. By stipulation, the action against College Hospital was dismissed because of problems related to the notice provision of the Tort Claims Act. Even though the three defendant doctors were employed by College Hospital, late notice defenses with respect to them were waived. Plaintiff's theory of liability is that defendants either failed to diagnose and properly treat a severed or lacerated median nerve in the left arm which was caused by the shot gun explosion, or they severed or lacerated the median nerve during the operative procedure. The case was tried to a jury which found only Dr. Blackwood negligent and awarded plaintiff $300,000 in damages. The trial judge entered a judgment n.o.v. and denied plaintiff's motion for a new trial as to all defendants. Plaintiff has appealed.
Plaintiff first contends that the judgment n.o.v. was improper. He argues that (1) the jury was presented with evidence from which it could conclude that Dr. Blackwood was negligent, and (2) since defendant Blackwood did not move for a directed verdict at the close of all the evidence, a judgment n.o.v. was precluded. The test for determining whether to grant a judgment n.o.v. is whether upon viewing the evidence and reasonable inferences most favorably to the opponent, reasonable minds could differ as to whether malpractice was established. *490 Dolson v. Anastasia, 55 N.J. 2, 5 (1969); Bell v. Eastern Beef Co., 42 N.J. 126, 129 (1964).
Viewing the evidence in a light most favorable to plaintiff, it becomes readily apparent that plaintiff did not prove that defendant Blackwood deviated from accepted medical standards. Plaintiff attempted to establish the standard of care owed and deviation therefrom through the testimony of the defendants and Dr. Lieberman, who was plaintiff's expert. At the motion for judgment n.o.v. and at the oral argument before us, plaintiff's attorney was asked to specify the alleged negligence of defendant Blackwood. He stated that as the attending surgeon, Dr. Blackwood was obligated to have been in the operating room making observations and that he should have detected the lacerated nerve. As the trial judge correctly concluded, no expert testified that plaintiff's assertion was the standard of care owed. While all three defendants acknowledged that Dr. Blackwood, as the attending surgeon, was the overall supervisor and had the authority to modify or veto any surgical procedures, no one said he was required to be in the operating room at any time in order to fulfill his supervisory responsibility. Since the evidence convincingly demonstrated that defendant Blackwood did not scrub for the surgery and probably was not even in the operating room at all, the judge correctly concluded that the evidence was not sufficient to establish that Dr. Blackwood had deviated from the accepted medical standard as attending surgeon. It is not a matter of common knowledge that the attending surgeon was supposed to be in the operating room.
Plaintiff further argues that the judgment n.o.v. was inappropriate since defendant did not move for a directed verdict at the end of all the evidence. The record shows that at the end of plaintiff's case, counsel for all defendants moved for a directed verdict asserting that Dr. Lieberman's testimony was based on medical possibilities rather than medical probabilities. The judge correctly denied the motion for the reason stated *491 because counsel was incorrect in her characterization of the testimony. It is clear that Dr. Lieberman was aware of the difference and followed the correct standard. Even though the motion for a directed verdict was made at only the end of plaintiff's case and it urged a very narrow ground, the judge's reasons for denial of the motion included his belief that the evidence was sufficient to permit the jury to find each defendant liable. The judge granted the judgment n.o.v. because he was incorrect when he allowed the jury to deliberate on the negligence of Dr. Blackwood. Where a motion is made at the end of plaintiff's case or at the end of all the evidence seeking a directed verdict which is denied and the judge decides in a post-judgment hearing that his prior ruling was incorrect, he is free to correct his mistake. Hoke v. Pioneer State Bank, 167 N.J. Super. 410 (App.Div. 1979), certif. den. 81 N.J. 290 (1979); Logan v. Tp. of No. Brunswick, 129 N.J. Super. 105 (App.Div. 1974), certif. den. 66 N.J. 328 (1974). We therefore conclude that the judgment n.o.v. was properly granted.
Next we consider whether the trial judge erred in denying plaintiff's motion for a new trial. As we previously noted, the jury found defendants Tischler and Boss not negligent and it found defendant Blackwood negligent which proximately contributed to plaintiff's condition. We do not know the basis for its decision since the jury was not asked to specify which theory of negligence it relied upon in its verdict. The record does not disclose the reasoning of the judge for denying the motion for a new trial. The order dated October 4, 1983 provided "It Is Further Ordered that Plaintiff's Motion seeking a new trial as to all issues and all Defendants pursuant to R. 4:40-2(c) be, and hereby is, denied;...."
A trial court is required to grant a motion for a new trial "if, having given due regard to the opportunity of the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that there was a miscarriage of justice under the law." R. 4:49-1(a). Our analysis of whether plaintiff is entitled to a new trial begins with the opening statement. Plaintiff's counsel *492 informed the jury without objection that Team A performed the surgery on the plaintiff and that Dr. Blackwood was "the captain of the team. He was the captain of the ship. He was overall in charge of the operating unit." Dr. Tischler testified that as the chief surgical resident he made the decisions pertaining to the management and care of the patient including the diagnosis and proposed treatment. He further stated that his functions were carried out under the supervision of the attending surgeon, Dr. Blackwood. He said it was Dr. Blackwood's responsibility to either approve, modify or reject any proposed plan. He further explained that if the attending physician was present during the surgery, but the attending physician was not required to be present, he had the authority to stop any procedure. He said Dr. Blackwood was in "overall control." Dr. Boss also testified that Dr. Blackwood was the chief man of the team. He was the senior overall physician for the team. Dr. Blackwood testified that he was employed as a faculty member from the University College of Medicine and Dentistry and that he worked at the hospital as the attending surgeon for Team A. He was in charge of Team A. Dr. Blackwood further stated that it was his responsibility to be at the hospital on January 19, 1979 for purposes of supervising the activities of Team A. and that he was at the hospital.
Throughout the trial, when both Doctors Boss and Tischler were asked to explain how certain procedures were conducted during the operation, they always responded by indicating what "we had done," rather than specifying what each individual had done. It was in this same connection that plaintiff's counsel sought to have the court instruct the jury that a team effort was involved rather than that of individuals. Plaintiff's counsel prepared questions for the jury which were consistent with the manner in which he had conducted the trial. Those questions requested the jury to consider the doctors as a unit rather than as individuals. He wanted the court to instruct the jury to determine whether the three defendants collectively were negligent, rather than to have the jury deliberate separately with *493 respect to each defendant. The court rejected the proposed interrogatories prepared by plaintiff's counsel. The court submitted interrogatories to the jury which required the jury to consider each defendant's negligence separately. Despite the separate questions in the interrogatories for the jury, the court's instruction left intact plaintiff's contention that a team effort had been involved rather than requiring the jury to specifically focus on the conduct of each defendant. By way of illustration, the court instructed the jury, "The defendants deny that the nerve was lascerated or cut by the gunshot wound. They contend that they inspected it; that the nerve was intact in all respects when they performed their operative procedure on the night of January 29. They said they specifically looked for that type of injury, although they could not rule out  as I said before  an internal injury of bruising of the nerve from the percussive effect of a shotgun blast." The foregoing statement is typical of the way the trial court lumped all defendants together and made no effort to separate their conduct. Notwithstanding the written interrogatories submitted to the jury, the instruction when considered in its entirety permitted the jury to deliberate as if all three defendants had performed the arm surgery, as if each was responsible for the conduct of the other and as if Dr. Blackwood was the "captain" who was responsible for being in the operating room and supervising the surgery.
Plaintiff tried the case based on the team approach to surgery. Here his trial strategy depicted very clearly that such doctrines as joint enterprise and captain of the ship would be the guiding principles in the jury's deliberation. All three defendants were employees of the same hospital and the jury was clearly left with the impression that Dr. Blackwood was the captain of the ship since he was in overall charge of the operating team. See Sesselman v. Muhlenberg Hospital, 124 N.J. Super. 285 (App.Div. 1973); Martin v. Perth Amboy General Hospital, et al., 104 N.J. Super. 335 (App.Div. 1969); McConnell v. Williams, 361 Pa. 355, 65 A.2d 243 (Sup.Ct. 1949); *494 Thomas v. Hutchinson, 442 Pa. 118, 275 A.2d 23 (Sup.Ct. 1971); and McKinney v. Tromly, 386 S.W.2d 564 (Tex.Civ.App. 1964). Also, plaintiff proceeded to try the case as if joint enterprise theory of liability applied to the team surgeons. See Prosser, The Law of Torts (4th ed. 1971) § 72 at p. 475. Finally, plaintiff also tried the case as if the borrowed servant-employee rule or vicarious liability applied. See Stumper v. Kimel, 108 N.J. Super. 209 (App.Div. 1970), certif. den. 55 N.J. 589 (1970). See also Annot., "Liability of one physician or surgeon for malpractice of another," 85 A.L.R.2d 889 (1962). On this appeal, however, plaintiff does not urge either of these doctrines as a basis for reversal. Hence, we do not decide whether they are applicable to this case.
Even though plaintiff does not urge a reversal based on either of the foregoing doctrines of liability, it was nonetheless the trial judge's obligation to make certain that the jury was not misled by legal doctrines not urged as a proper basis for liability. Additionally, the submission of the case against Dr. Blackwood to the jury permitted the jury to deliberate on a phantom defendant. Consequently, when the phantom defendant and the lack of proper direction from the court in its charge are considered as a whole, we believe the jury was misled to reach a result they might otherwise not have reached as to each defendant. These improprieties permeated and tainted the jury's deliberations to such an extent that a new trial is required.
The lack of objections from defense counsel and her failure to insist on proper jury instructions contributed to the faulty result. It is highly probable that once the jury decided that Dr. Blackwood, the first listed in the jury interrogatories, and who was referred to as the "captain of the ship," the "captain of the team" and in overall charge of the operation, was negligent, the jury did not thereafter seriously deliberate with respect to the other defendants.
*495 Additionally, the deficiency in the jury's deliberations is further demonstrated by the substance of the verdict itself. Indispensable to any judgment of liability was a finding that the severed median nerve had been overlooked by the diagnosis or that it had been severed during surgery. Obviously, one of these alternatives was found as a fact as to Dr. Blackwood, whose role in the surgical procedure was essentially peripheral. But having made such a finding, the jury then exonerated from liability the two co-defendants who actually performed the operation and who were in uninterrupted contact with plaintiff at all critical times. In our view, the two results are hopelessly discordant and can only be explained as confirmation of the fact that the jury had totally lost its bearings in the confusion of issues. Consequently, we conclude that a new trial is required with respect to Doctors Tischler and Boss. Since we have already determined that the evidence was insufficient to permit the jury to deliberate with respect to Dr. Blackwood, no new trial is required as to him.
On the new trial, the law firm that represented the three defendants in the first trial and on this appeal should re-examine its position to determine whether it should represent either defendant. The probabilities of a conflict may become manifest in the circumstances presented here. See Lieberman v. Employers Ins. Co. of Wausau, 84 N.J. 325 (1980); State v. Bellucci, 81 N.J. 531 (1980). A conflict was demonstrated during the prior trial at such time as when counsel failed to object to plaintiff's opening statement that Dr. Blackwood was the "captain of the ship" or "captain of the team." That type of statement tended to shift the focus away from Doctors Boss and Tischler but shifted the focus to Dr. Blackwood. Interestingly, there was no motion made at the end of plaintiff's case or at the end of the entire case for a directed verdict simply on behalf of Dr. Blackwood urging reasons similar to those the trial court followed when it ultimately granted the judgment n.o.v. Finally, there was no objection to the trial court's failure to instruct the jury as to the need to deliberate *496 separately with respect to each defendant and to further instruct the jury that the captain of the ship doctrine did not apply. Not even trial strategy can be used to camouflage an inherent conflict. Even though Dr. Blackwood will not be involved in the retrial, this re-examination for a continuing conflict is nonetheless required.
The judgment n.o.v. is affirmed. The order denying a new trial as to defendants Tischler and Boss is reversed and affirmed as to defendant Blackwood. The matter is remanded for a new trial.
SIMPSON, J.A.D., concurring in part and dissenting in part.
I join with the majority in affirming the trial court's entry of judgment in favor of Dr. Blackwood notwithstanding the verdict and affirming the order denying a new trial as to this defendant. I respectfully dissent as to the majority's reversal as to Doctors Tischler and Boss, however, and would also affirm the trial court's denial of the motion for a new trial as to these defendants.
If there was any confusion concerning plaintiff's theory of malpractice against the three doctors, the record is perfectly clear that it was caused by plaintiff's counsel and not defense counsel or the court. In his opening statement plaintiff's counsel told the jury:
Dr. Blackwood at the hospital was on surgical team A, was the attending physician. What that means to lay people is basically he was the captain of the team. He was the captain of the ship. He was overall in charge of the operating unit.
* * * * * * * *
Every case has two issues. It will be explained more thoroughly by Judge Thomas. There is liability and damages. You have to first conclude, Ladies and Gentlemen, by a preponderance of the credible evidence that the three doctors committed malpractice or to be more specific deviated from accepted standards of surgical care with respect to the neurosurgery performed on Mr. Whitfield. Then if you so conclude, you must evaluate the damages.
* * * * * * * *

*497 It is our contention that through Dr. Lieberman, that the defendants either missed a laceration or cut or some damage to that nerve on January 29, 1979 the night that they operated on him and looked at the nerve and looked at the vessels and had to do certain dissecting procedures and certain suturing procedures and concluded that there was no damage to the nerve.
They either failed to find that damage that night or alternatively as a matter of medical probability they did the damage.
* * * * * * * *
It is also alleged that the three defendants should have consulted other specialists in arm surgery, neurosurgeons, plastic surgeons, maybe orthopedic surgeons who were qualified and specialized in peripheral nerve injury of this type.
It is also contended that the wound site as it ultimately was discovered two months later had evidence of damage, also had evidence of foreign bodies and foreign substances that should not have been there in the wound. So it is our contention that the wound was not thoroughly handled. It was not thoroughly cleaned. it was not thoroughly prepared for whatever procedures the defendants used on January 29, 1979.
The proofs presented to the jury involved an expert knowledge standard of care, but, as the majority has noted, there was no proof that Dr. Blackwood had a duty to be in the operating room with Doctors Tischler and Boss. There was evidence to support a verdict either way concerning the operating surgeons, however, and the jury's finding of no negligence on the part of Dr. Tischler or Dr. Boss is sufficiently supported by the proofs.
The motion by defense counsel at the end of plaintiff's case was for "a directed verdict of no cause of action based upon the testimony of Dr. Lieberman." The judge ruled correctly as to the rather vague objections to the testimony of this expert. The motion was not directed to an absence of proof of a standard as to Dr. Blackwood, which is understandable in the light of plaintiff's apparent theory of joint enterprise or "captain of the ship," a theory which counsel did not pursue in requests to charge or on this appeal. There was no further motion by any defendants after both sides had rested.
Just prior to summations the judge reviewed the charge he planned to deliver, and counsel agreed to the three questions on a verdict form that lumped the three doctors together as to *498 negligence, proximate cause and damages. Neither counsel's summation attempted to separate the possible liability of the three defendants. The next day, immediately prior to the judge's charge, plaintiff's attorney requested separate questions as to possible negligence and proximate cause of the three defendants, advising the court:
MR. GERN: Judge, yesterday I did not get much of a chance to look at the questions and study them. In studying them overnight, my concern is with respect to all of them.
With respect to Number 1, Dr. Blackwood, Tischler, and Boss are all lumped together in that question.
I am concerned in this particular case, unless there is some kind of instruction to the jury, or a stipulation as to joint responsibility, that they may view Dr. Blackwood with considerable difference than they may Tischler, or Boss.
Dr. Blackwood was there, but I gather he did not touch the man.
There was no objection by defense counsel and the court acceded to plaintiff's counsel's request concerning the verdict form. There was no objection by either attorney to the charge as delivered (except as to the definition of "general surgeon," which is in no way involved on this appeal). After three hours of deliberations, the jury requested a rereading of part of Dr. Blackwood's testimony "regarding his whereabouts during the actual arm surgery as distinct from the chest and abdomen surgery." This was done, after discussion with counsel, including the following portion of Dr. Blackwood's deposition testimony:
QUESTION: Is there anything to indicate in the record that you did any actual surgery?
ANSWER: No.
QUESTION: What I'm really asking you, based on the record, and realizing you have no independent recollection, would it appear that you personally didn't go into the Operating Room and perform any of the operative procedures?
ANSWER: I can't answer that. I know I was in the Operating Room.
QUESTION: You would have been required to be physically in the room?
ANSWER: Yes.
The jury deliberated several more hours before exonerating Dr. Tischler by a 6 to 0 vote and Dr. Boss by 5 to 1. They unanimously found Dr. Blackwood negligent, perhaps concluding he departed from some "duty" to be in the operating room *499 during the arm surgery. We do not really know the basis of the jury's finding Dr. Blackwood negligent, but, as the majority points out, plaintiff provided no expert standard of care from which a deviation might have been found.
Under all the circumstances of this case, I believe the trial judge's disposition of all post-verdict and post-judgment rulings was correct, and I would affirm them.