WALTER M. WHITFIELD, PLAINTIFF-RESPONDENT AND AP-
PELLANT, v. J. BLACKWOOD, M.D., DEFENDANT-RESPON-
DENT, AND CHARLES TISCHLER, M.D., AND WILLIAM BOSS,
M.D., DEFENDANTS-APPELLANTS.

Argued November 6, 1985—Decided January 9, 1986.

*David R. Gross* argued the cause for appellants Charles
Tischler, M.D. et al., and respondent J. Blackwood, M.D. (*Budd,
Larner, Kent, Gross, Picillo, Rosenbaum, Greenberg & Sade*,
attorneys; *Mr. Gross, Cynthia A. Matheke,* and *Donald P.
Jacobs,* on the briefs).

*Amos Gern* argued the cause for respondent and appellant
Walter M. Whitfield (*Gern, Dunetz, Davison & Weinstein*,
attorneys; *Mr. Gern* and *Allen J. Barkin,* on the briefs).

PER CURIAM.

The judgment as to defendant Dr. Blackwood is affirmed,
substantially for the reasons expressed in the opinions below.

The judgment as to defendants Drs. Tischler and Boss is
reversed, and the order of the Law Division denying a new trial
is reinstated, substantially for the reasons expressed in the
concurring and dissenting opinion of Judge Simpson, reported
at 206 *N.J.Super.* 487.

CLIFFORD, J., concurring.

Although I admire the creativity behind the dissenters' pro-
posal to give plaintiff yet another bite of this thoroughly-
chewed apple, I record separately my disagreement with their
votes (1) to reinstate plaintiff's claim against Dr. Blackwood—a
claim that every judge at the trial and appellate levels who has
scrutinized it, *including* our dissenting colleagues, has held to
have been unwarranted by the evidence—and (2) to send back

for retrial the case against Drs. Boss and Tischler, in whose favor the jury returned a verdict that plaintiff never challenged on appeal. The route to that result converts us from the Court of last resort, *see N.J. Const.* of 1947 art. VI, to some sort of super rescue-mission.

As the dissent points out,

[t]he theory of plaintiff's case was that one or more members of the team failed to exercise that degree of care expected of them as medical professionals either by (1) not detecting the severed nerve, or (2) actually cutting it in the course of treating the underlying gunshot wound.

[*Post* at 506.]

That is of course accurate, as far as it goes. What should be emphasized, however, is that the liability asserted against these physicians was based on the notion that they were a team—indeed, within the hospital they were designated as Surgical Team "A"—that they functioned as a team, and that Dr. Blackwood was "captain of the ship." As to Blackwood there was no evidence from which a fact-finder could conclude that he deviated from accepted medical standards. No expert testified to Blackwood's breach of professional responsibility. Any jury finding of Blackwood's culpability would have had to have been based on the theory that he was somehow "responsible" for plaintiff's injury because of what went on in the operating room at the hands of the operating surgeons. But the jury found, on contested evidence, that the operating surgeons were not liable; hence, in the absence of violation of some independent duty by Dr. Blackwood, as to which the record is barren, a verdict against him simply could not stand. It was a mistake. That is one of the reasons we have, and have always had, a provision in our Rules for judgment *n.o.v.*—to afford the trial court the opportunity to correct jury error.

Our dissenting colleagues, having reached the conclusion—a mistaken one, I submit—that the case should be retried as to Boss and Tischler, then heap error on error by putting to Dr. Blackwood as well the task of rerunning a course that the dissenters agree took him to the right finish line in the first

place—this because of what they perceive to have been an "unreal scenario" in the trial. That approach, however, completely overlooks the fact that whatever confusion may have beclouded this trial originated with plaintiff's attorney, not with defendants' attorney or with the trial court. Plaintiff proceeded from beginning to end, or almost the end—I will get to that in a minute—on the theory that all defendants were jointly liable for the alleged malpractice. He pursued that theory single-mindedly, doggedly, through the trial, including his summation to the jury.

At that point, or immediately thereafter, the attorney must have been stricken with a revelation of sorts. Here is how the scenario was played out, according to Judge Simpson's dissent below:

> Just prior to summations the judge reviewed the charge he planned to deliver, and counsel agreed to the three questions on a verdict form that lumped the three doctors together as to negligence, proximate cause and damages. Neither counsel's summation attempted to separate the possible liability of the three defendants. The next day, immediately prior to the judge's charge, plaintiff's attorney requested separate questions as to possible negligence and proximate cause of the three defendants, advising the court:
>
> > MR. GERN: Judge, yesterday I did not get much of a chance to look at the questions and study them. In studying them overnight, my concern is with respect to all of them.
> >
> > With respect to Number 1, Dr. Blackwood, Tischler and Boss are all lumped together in that question.
> >
> > I am concerned in this particular case, unless there is some kind of instruction to the jury, or a stipulation as to joint responsibility, that they may view Dr. Blackwood with considerable difference than they may Tischler, or Boss.
> >
> > Dr. Blackwood was there, but I gather he did not touch the man.
>
> There was no objection by defense counsel and the court acceded to plaintiff's counsel's request concerning the verdict form. There was no objection by either attorney to the charges as delivered * * *.
>
> [*Whitfield v. Blackwood*, 206 *N.J.Super.* 487, 497–98 (App.Div.1985) (Simpson, J.A.D., concurring in part and dissenting in part).]

And here is the same business from the trial court's perspective, as announced during the post-trial motion argument:

> And I must frankly say that, to the very end of this case, I thought the case was being tried on the theory of one for all and all for one. And that is why I prepared questions for the jury that encompassed the three defendants togeth-

er, and it was only at plaintiff's request that I separated them out and asked the jury to determine whether each individual defendant was guilty of negligence.

Despite the foregoing the dissent would reach out to give plaintiff the benefit of an "unreal scenario" that plaintiff created and promoted, and would find error prejudicial to plaintiff because the trial court supplemented its charge—never objected to—with the very questions that plaintiff requested.

I gather that the dissenters would go to this extreme because they agree with the Appellate Division majority that the jury verdict in favor of Boss and Tischler cannot stand and the trial court erred in not granting a new trial as to those defendants. To begin with, I do not perceive that plaintiff properly raised in the Appellate Division any question as to defendants Boss and Tischler. Although his notice of appeal indicates an appeal from, *inter alia,* the order denying plaintiff a new trial as to those defendants, his Appellate Division brief does not argue for reversal of the judgments in favor of Boss and Tischler. Instead, it addresses only the granting of judgment *n.o.v.* in favor of Blackwood, the inadequacy of the verdict against Blackwood, and the entitlement to pre-judgment interest on any reinstated verdict against Blackwood. The table of contents to plaintiff's Appellate Division brief, under the heading "legal argument," reads as follows:

POINT I

THE TRIAL COURT ERRED IN GRANTING DEFENDANT BLACKWOOD'S MOTION FOR JUDGMENT *N.O.V.*

A. *Judgment n.o.v. is appropriate only if the evidence presented to the jury, viewed in its most favorable light, will support no reasonable theory of negligence.*

B. *Judgment n.o.v. is not appropriate in this case because plaintiff provided the jury with evidence from which negligence could reasonably be found as to Blackwood.*

C. *Judgment n.o.v. is not appropriate relief even if the trial court finds that the judgment is not supported by weight of the evidence.*

D. *Defendant, Blackwood, is barred from obtaining a judgment n.o.v. by failing to have made a motion for judgment at the close of the entire case.*

POINT II

THE QUANTUM OF DAMAGES ASSESSED BY THE JURY WAS SO DISPROPORTIONATE TO THE INJURY AND RESULTING DISABILITY SHOWN DURING THE TRIAL SO AS TO REQUIRE A MODIFICATION OF THE VERDICT BY THE PROCEDURE OF ADDITUR.

POINT III

PLAINTIFF IS ENTITLED TO THE PREJUDGMENT INTEREST IF THE VERDICT IS REINSTATED.

A. *The defendant, Blackwood, is not a public employee and accordingly, does not receive the benefits and limitations of N.J.S.A. 59:9–2 and R. 4:42–11(b).*

B. *Assuming Defendant, Blackwood, is a public employee, he is estopped from asserting said status.*

Plaintiff's argument as set forth in the Appellate Division brief was limited to the above-stated points exclusively. Understandably, defendants Boss and Tischler made no presentation in the brief filed by their attorney on behalf of Blackwood only, the judgment in their favor not having been attacked. Yet when the Appellate Division opinion was published, lo and behold Boss and Tischler were "in" and Blackwood was "out." That our system of jurisprudence will not tolerate a result reached in such a bizarre fashion is unmistakably clear. The Appellate Division should have dismissed the appeal as to Boss and Tischler. *See, e.g., Kerney v. Kerney,* 81 *N.J.Super.* 278, 282 (App.Div.1963) (appeal dismissed because appellants' brief contained "no argument in support of the grounds raised in their notice of appeal * * *."); *State v. Plainfield-Union Water Co.,* 75 *N.J.Super.* 571, 583 (App.Div.1962), *aff'd sub nom. State v. Elizabethtown Water Co.,* 40 *N.J.* 280 (1963) (issue raised in notice of appeal, but not briefed or argued, resolved against appellant); *Battaglio v. Red Bank Discount Center, Inc.,* 65 *N.J.Super.* 185, 187 (App.Div.1961) (appeal dismissed as to one appellant as to whom no claim of error was set forth in brief filed on behalf of multiple appellants); *Kirzenbaum v. Paulus,* 57 *N.J.Super.* 80, 84 (App.Div.1959) (party will not be heard to argue a point not included in argument portion of brief or in "Statement of Questions Involved."). The issue as to Drs. Tischler and Boss not having been properly raised in the Appellate Division, that court should not have constructed any

argument in respect of those defendants, much less have reversed the judgments in their favor. Nor, perforce, should we entertain any similar fancy.

Too "technical" an approach? Too sterile? Then pass it and go directly to the point underscored by Judge Simpson below— basic, uncomplicated, non-technical, and irrefutable: "There was evidence to support a verdict either way concerning the operating surgeons * * * and the jury's finding of no negligence on the part of Dr. Tischler or Dr. Boss is sufficiently supported by the proofs." 206 *N.J.Super.* at 497 (Simpson, J.A.D., concurring in part and dissenting in part).

For the reasons set forth in Judge Simpson's opinion below, as supplemented by the foregoing, I vote with the other members of the majority to affirm the judgment of the Appellate Division in favor of Dr. Blackwood, to reverse the judgments awarding plaintiff a new trial as to Drs. Tischler and Boss, and to reinstate the judgments in favor of those defendants.

O'HERN, J., dissenting.

We would affirm the judgment below as to Doctors Tischler and Boss essentially for the reasons stated in the majority opinion of the Appellate Division published at 206 *N.J.Super.* 987 (1985). We add further only that we believe the only way to avoid a "manifest denial of justice under the law," *Dolson v. Anastasia,* 55 *N.J.* 2, 7 (1969), is to grant a new trial as to all parties. By permitting the case to go to the jury as to Doctor Blackwood, the trial court, in effect, quite unintentionally created an unreal scenario. The jury was permitted to consider the case on the proposition that there was sufficient evidence before it to find that any member of the operating team was liable for the malpractice that has left Walter Whitfield with a permanently-disabled left arm.

The facts are set forth in the Appellate Division opinion. We perceive that the only way that the jury could have returned a verdict in favor of plaintiff was to find that someone on the

operating team committed professional error that was a proximate cause of the plaintiff's loss of function in his arm. The theory of plaintiff's case was that one or more members of the team failed to exercise the degree of care expected of them as medical professionals either by (1) not detecting the severed nerve, or (2) actually cutting it in the course of treating the underlying gunshot wound. Because this was an emergency situation, plaintiff had no prior professional relationship with any of the doctors. The actual surgery was performed by Doctors Boss and Tischler. Boss was the surgeon of record; he held the instruments, did most of the cutting, and prepared the post-operative report. Tischler was responsible for the completeness of the report. Doctor Blackwood was presented to the jury as the attendant physician and the senior member of the operating team since he was no longer in residency. He described his participation as follows:

> As far as I can remember in this case I did not scrub in the operation and that in general is deliberate on my part. And again, I think in a way you have to understand the training programs in this country for the last hundred or one hundred fifty years have been based on a system of graduated experience. People, the most junior people do the things that they can do and as they gain more experience they do more things.
>
> So those on the attending staff deliberately do not participate. What I tell the team is that I won't scrub up on the case unless you ask or *unless I think you should have asked me.* And I do that deliberately so I will get an impression of whether they think they are in trouble or not and that sort of thing. And for an operation like this with the abdomen part was a negative exploration except for ligation of some bleeding vessels, I am certain that I did not scrub.
>
> [Emphasis added.]

Thus, Dr. Blackwood expressed his supervisory responsibility in terms of stepping in when he thought it necessary.

At the time of the Whitfield operation, Boss was a senior resident in his fourth year of general surgery. He explained that Blackwood was the chief doctor on the team. In performing certain preoperative tests on Whitfield, the doctors discovered that Whitfield could not oppose his left thumb and pinky. Such a test result indicates injury to the median nerve. A preoperative note made by Boss was signed by both Boss and

Blackwood. The note indicated that the surgeons should check for damage to the blood vessels of the arms and look for any blood clots. It also indicated the possibility of a median nerve injury.

Thus it was not irrational for the jury to have believed that it might conclude that the chief doctor on the team, who was supposed to resolve issues of supervision even when not asked, may have been the cause of the error and the injury by not directing the junior members of the team to take the necessary steps to find or restore the damaged nerve.

The jury was led to believe that it could ascribe the requisite failure to detect or avoid severing the nerve to one or more members of the operating team. As noted by the Appellate Division, the jury attributed this responsibility to Doctor Blackwood.

Of course, we agree that we are not faced here with inconsistent verdicts mandating a new trial. *See Brendel v. Public Serv. Elec. and Gas Co.*, 28 *N.J.Super.* 500, 507 (App.Div.1953) ("* * * inconsistent and irreconcilable verdicts are fatally defective and should normally be set aside"). But our appellate review is not exhausted by determining that the verdicts can be reconciled. When there is no special deference due to the trial court's view of credibility, or demeanor or other feel of the case not transmitted by the written record, an appellate court must review the matter to determine whether "it clearly appears that there was a miscarriage of justice under the law." *Dolson v. Anastasia, supra,* 55 *N.J.* at 7 (now the test of Rule 4:49–1(a)). We are convinced that the jury's verdict was the result of mistake as to the appropriate legal standards under which it was to decide the entire controversy.

While we are trained to accept the nuances of judgment n.o.v. practice, we doubt that conscientious jurors would find much meaning in the hollow recognition accorded to their verdict by the majority's decision. We have always emphasized that juries must not be misled about the legal effect of their deliberations.

*Roman v. Mitchell,* 82 *N.J.* 336, 346–47 (1980). Just recently, we restated our commitment to this principle in remanding for a new trial a complex case involving multi-party liability in an aircraft accident dramshop setting:

> The parties should be permitted to present their cases in the context of what the law is * * * rather than as the trial court misunderstood the law to be. In proceeding as it did here, the court created a "make believe" scenario, the legal equivalent of half a deck. Accordingly, the cases must go back for trial * * *.
>
> [*Buckley v. Pirolo,* 101 *N.J.* 68, 79 (1985).]

Since a retrial limited just to Doctors Boss and Tischler may involve new evidence, it may present a jury with another incomplete view of the legal responsibilities of the parties, just as the trial court's submission of Doctor Blackwood's liability presented the jury with a "make-believe scenario." Hence we believe that the only just resolution is to resubmit the entire matter in the context of what the law is. If there is no evidence upon which to base Doctor Blackwood's liability, the jury should not be misled by having that issue submitted to it.

*For affirmance* —Justices CLIFFORD, POLLOCK, GARIBALDI and STEIN—4.

*For reversal* —Chief Justice WILENTZ, and Justices HANDLER and O'HERN—3.