820 A.2d 637

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. TRACI
E. STANTON, A/K/A TRACI FRY AND TRACI PFAFF,
DEFENDANT–RESPONDENT.

Argued January 3, 2002—Reargued November
18, 2002—Decided April 17, 2003.

*Mark Paul Cronin,* Deputy Attorney General, argued the cause for appellant (*Peter C. Harvey,* Acting Attorney General of New Jersey, attorney; *Jordana Jakubovic,* Deputy Attorney General and *Carol M. Henderson,* Assistant Attorney General, of counsel and on the briefs).

*Linda Mehling,* Assistant Deputy Public Defender, argued the cause for respondent (*Yvonne Smith Segars,* Public Defender, attorney).

The opinion of the Court was delivered by

COLEMAN, J.

This appeal involves a conviction for second-degree vehicular homicide, *N.J.S.A.* 2C:11–5b, based on defendant's reckless operation of her motor vehicle. The State relied on intoxication and other evidence such as speed to establish that defendant recklessly operated her motor vehicle. The jury was not asked to state the basis for its finding of recklessness. The sentencing provision for vehicular homicide mandates a minimum term of imprisonment for defendants who were intoxicated at the time of the offense and such "minimum term shall be fixed at, or between, one-third and

one-half of the sentence imposed by the court or three years, whichever is greater, during which the defendant shall be ineligible for parole." *N.J.S.A.* 2C:11–5b(1). The trial court found that defendant should be sentenced as if the offense were third-degree, found that defendant was intoxicated, and sentenced defendant to imprisonment for three years subject to parole ineligibility of three years. The issue before us is whether the jury should have been required to determine the sentence enhancement factor—the intoxication. We hold that the jury was not required to make that determination.

## I.

In February 1997, defendant Traci Stanton invited her boyfriend, her brother, and her sister-in-law, Nancy Smith, to her house to play cards and drink beer. Defendant admitted drinking approximately one and one-half bottles of beer, although her brother recalled defendant drinking between three and five beers. At approximately 11:30 p.m., defendant drove her Porsche to purchase more beer while Smith rode in the front passenger seat. After purchasing the beer, defendant and Smith dropped off the beer at defendant's house and proceeded to Smith's home to pick up her dog. On their way to Smith's home, defendant was unable to steer her car around a turn with the result that her vehicle left the road and struck a tree near the right shoulder of the road. The police arrived on the scene shortly before 1:00 a.m. and found the vehicle "completely on its roof." While treating defendant and before removing her from the vehicle, an emergency medical technician (EMT) discovered a beer bottle "[w]ithin four inches" of defendant's head. Smith was found underneath the trunk of the car on the passenger side of the vehicle. She died as a result of the extensive injuries suffered during the accident.

The morning following the accident defendant was interviewed by Officer Priole. At that time she stated that she had been driving between sixty and sixty-five miles per hour and that neither she nor Smith had been wearing a seatbelt. The posted

speed limit was fifty miles per hour, but the recommended speed at the site of the accident was only thirty-five miles per hour. Defendant admitted that she and Smith had been drinking beer in the car.

A grand jury indicted defendant for second-degree vehicular homicide, *N.J.S.A.* 2C:11–5. In addition, the police issued defendant summonses for several motor vehicle offenses, including driving while intoxicated (DWI), in violation of *N.J.S.A.* 39:4–50; reckless driving, in violation of *N.J.S.A.* 39:4–96; consumption of alcohol while driving, in violation of *N.J.S.A.* 39:4–51a; and failure to wear a seatbelt, in violation of *N.J.S.A.* 39:3–76.2f. The vehicular homicide was tried to a jury while the non-indictable offenses were tried simultaneously before the judge. At the close of all the evidence, the trial court instructed the jury that the State must prove beyond a reasonable doubt the elements of the vehicular homicide offense. The jury found defendant guilty of second-degree vehicular homicide, contrary to *N.J.S.A.* 2C:11–5b.

The trial judge, sitting without the jury, addressed the alleged motor vehicle violations. She found defendant guilty of all of the offenses except the DWI on which she reserved decision until sentencing on the vehicular homicide conviction. At sentencing, the judge first addressed the charge of driving while intoxicated and determined that "the defendant must have consumed substantially more than two or three beers as everyone remember[ed]" and that "[t]he manner in which the accident occurred ... corroborate[d] the fact that she was driving under the influence." Based on the evidence presented during the vehicular homicide trial, the judge found that the proofs convinced her beyond a reasonable doubt that defendant was guilty of driving while intoxicated.

Following the trial court's denial of defendant's motion for a new trial, defendant was sentenced on the vehicular homicide charge. After evaluating the aggravating and mitigating factors, the judge sentenced defendant as if the second-degree offense were a third-degree crime and imposed the three-year parole ineligibility term mandated by *N.J.S.A.* 2C:11–5b(1). The manda-

tory parole ineligibility term was applied because the judge found defendant was intoxicated at the time she committed the vehicular homicide.

Defendant appealed her vehicular homicide conviction, claiming her conviction should be reversed based on alleged trial error. She also contended that *N.J.S.A.* 2C:11–5b(1) was unconstitutional because it permits a judge to find an element of vehicular homicide—intoxication—by a preponderance of the evidence, rather than by a jury beyond a reasonable doubt. The Appellate Division affirmed in part and reversed in part. *State v. Stanton,* 339 *N.J.Super.* 1, 770 *A.*2d 1198 (2001).

The court applied the constitutional doubt doctrine and held that the three-year mandatory minimum sentence was unconstitutionally imposed because the issue of defendant's intoxication had not been decided by the jury. *Id.* at 6, 770 *A.*2d 1198. The panel interpreted this Court's holding in *State v. Johnson,* 166 *N.J.* 523, 766 *A.*2d 1126 (2001), to mean that

> if imposition of a statutorily mandated parole ineligibility term is based on the existence of a fact other than a record of a prior conviction, then, as a matter of the imperatives of the Fifth and Sixth Amendments, that fact must be found by a jury beyond a reasonable doubt. Thus, if that fact is not a discrete element of the offense which the jury must find in order to convict, then it must be submitted to the jury for its determination.
>
> [*Stanton, supra,* 339 *N.J.Super.* at 6–7, 770 *A.*2d 1198.]

The Appellate Division recognized that "there is a textual difference between [the vehicular homicide's mandatory minimum parole ineligibility,] *N.J.S.A.* 2C:11–5b(2)[,] and the corresponding NERA provision [requiring a defendant to serve eighty-five percent of a sentence for committing a violent crime,] *N.J.S.A.* 2C:43–7.2." *Stanton, supra,* 339 *N.J.Super.* at 7, 770 *A.*2d 1198. Specifically, "NERA omits any reference to the standard of proof necessary to establish the parole-ineligibility fact, and it does not say whether the fact-finder is the judge or jury." *Ibid.* On the other hand, *N.J.S.A.* 2C:11–5b(2) "specifies that the finding must only meet the preponderance of the evidence standard and provides that the finding must be made by the 'court'—presumably

the judge." *Ibid.* Despite this difference, the Appellate Division was

> convinced that if constitutional principles require the NERA provision to be read as mandating a jury finding of the NERA predicate fact beyond a reasonable doubt in order for that statute to survive constitutional challenge, then, by the same token, *N.J.S.A.* 2C:11–5b(2) can survive constitutional challenge only if it is read in the same way.

> [*Ibid.*]

In other words, "[t]he *Johnson* holding, as we understand it, applies to every statute imposing a mandatory parole ineligibility term because of the capacity of that term to increase real time." *Ibid.* Rather than declare *N.J.S.A.* 2C:11–5b(2) unconstitutional, the Appellate Division elected to engage in "judicial surgery" to sustain the statute on "an assumption that the Legislature intended to act in a constitutional manner, ... [stating:] That can only be done by excising ... the references to the preponderance standard and the court's findings and then construing the excised statute as *Johnson* construed NERA." *Id.* at 7–8, 770 *A.*2d 1198.

According to the procedure articulated in *State v. DeLuca,* 108 *N.J.* 98, 111, 527 *A.*2d 1355, *cert. denied, New Jersey v. DeLuca,* 484 *U.S.* 944, 108 *S.Ct.* 331, 98 *L.Ed.*2d 358 (1987), the trial judge was required to decide the DWI offense after the jury returned a verdict on vehicular homicide. *Ibid.* Although the DWI offense was not tried to a jury, each element of that offense, including intoxication, still had to be found beyond a reasonable doubt. *Ibid.* The Appellate Division found that although both *N.J.S.A.* 2C:11–5b and *N.J.S.A.* 39:4–50 define intoxication identically, the principles set forth in *Johnson* still required a jury finding of intoxication beyond a reasonable doubt. *Stanton, supra,* 339 *N.J.Super.* at 8–9, 770 *A.*2d 1198. The panel reasoned that even though "the judge found intoxication beyond a reasonable doubt [that] does not mean that the jury either did[,] or would have[,] [because] it was free to attribute the fatal accident to speeding alone and there was evidence on which it could have found that defendant was not intoxicated." *Ibid.* As a remedy, the Appellate Division vacated the three-year parole disqualifier but affirmed defendant's conviction, stating that it was "satisfied that

there was no reversible error attending the jury verdict of guilt of vehicular homicide." *Id.* at 9, 770 *A.*2d 1198. The panel remanded to the trial court with the direction that the judgment of conviction should be modified by vacating the parole ineligibility term. *Ibid.*

Defendant's petition for certification was denied. *State v. Stanton,* 169 *N.J.* 609, 782 *A.*2d 427 (2001). The State's cross-petition for certification challenging the Appellate Division's vacation of the three-year parole disqualifier was granted. *Ibid.* While this appeal was pending, the United States Supreme Court granted certiorari in *Harris v. United States* on December 10, 2001. 534 *U.S.* 1064, 122 *S.Ct.* 663, 151 *L.Ed.*2d 578 (2001). We heard oral arguments on January 2, 2002, and decided to withhold disposition until *Harris* was decided. *Harris* was decided on June 24, 2002. *Harris v. United States,* 536 *U.S.* 545, 122 *S.Ct.* 2406, 153 *L.Ed.*2d 524 (2002). After supplemental briefs were filed with this Court, the case was reargued before us on November 18, 2002.

## II.

The State argues that the Appellate Division erred in interpreting *Johnson* to require that the jury, rather than the judge, had to decide whether defendant was intoxicated before the sentence enhancement statute could be applied. In its supplemental brief, the State maintains that "[t]he decision of the United States Supreme Court in *Harris* [, *supra,* 536 *U.S.* 545, 122 *S.Ct.* 2406, 153 *L.Ed.*2d 524,] mandates a reversal of the Appellate Division in this case." The State contends "that the mandatory parole term required under *N.J.S.A.* 2C:11–5b(1) when a vehicular homicide is committed by an individual who is under the influence of alcohol fully complies with all federal and state constitutional principles."

## A.

Our analysis of the issues presented must begin with the vehicular homicide statute and its sentencing provisions. The

84

current vehicular homicide statute that has been in effect since 1995 provides:

a. Criminal homicide constitutes vehicular homicide when it is caused by driving a vehicle or vessel recklessly.

b. Except as provided in [*N.J.S.A.* 2C:11–5b(3) ], vehicular homicide is a crime of the second-degree.

(1) If the defendant was operating the auto or vessel while under the influence of any intoxicating liquor, narcotic, hallucinogenic or habit-producing drug, or with a blood alcohol concentration at or above the prohibited level as prescribed in R.S.39:4–50, or if the defendant was operating the auto or vessel while his driver's license or reciprocity privilege was suspended or revoked for any violation of R.S.39:4–50, section 2 of P.L.1981, *c.* 512 (C.39:4–50.4a), by the Director of the Division of Motor Vehicles pursuant to P.L.1982, *c.* 85 (C.39:5–30a et seq.), or by the court for a violation of R.S.39:4–96, the defendant shall be sentenced to a term of imprisonment by the court. The term of imprisonment shall include the imposition of a minimum term. The minimum term shall be fixed at, or between, one-third and one-half of the sentence imposed by the court or three years, whichever is greater, during which the defendant shall be ineligible for parole.

(2) The court shall not impose a mandatory sentence pursuant to paragraph (1) of this subsection unless the grounds therefor have been established at a hearing. At the hearing, which may occur at the time of sentencing, the prosecutor shall establish by a preponderance of the evidence that the defendant was operating the auto or vessel while under the influence of any intoxicating liquor, narcotic, hallucinogenic or habit-producing drug, or with a blood alcohol concentration at or above the level prescribed in R.S.39:4–50 or that the defendant was operating the auto or vessel while his driver's license or reciprocity privilege was suspended or revoked for any violation of R.S.39:4–50, section 2 of P.L.1981, *c.* 512 (C.39:4–50.4a), by the Director of the Division of Motor Vehicles pursuant to P.L.1982, *c.* 85 (C.39:5–30a et seq.), or by the court for a violation of R.S.39:4–96. In making its findings, the court shall take judicial notice of any evidence, testimony or information adduced at the trial, plea hearing, or other court proceedings and shall also consider the presentence report and any other relevant information.

[*N.J.S.A.* 2C:11–5a, –5b(1) and (2).]

 Subsection a describes what constitutes the offense of vehicular homicide. The "[p]rescribed culpability requirement applies to all material elements" of the offense. *N.J.S.A.* 2C:2–2c(1). Intoxication in combination with other evidence or standing alone *may* satisfy the recklessness element. *State v. Jamerson,* 153 *N.J.* 318, 335, 708 *A.2d* 1183 (1998); *State v. LaBrutto,* 114 *N.J.* 187, 204, 553 *A.2d* 335 (1989); *State v. Casele,* 198 *N.J.Super.* 462, 472, 487 *A.2d* 765 (App.Div.1985). In other words, a defendant's sobriety or insobriety is only one of several circumstances a

jury is permitted to consider when deciding whether the element of recklessness, as defined in *N.J.S.A.* 2C:2–2b(3), has been established beyond a reasonable doubt. *LaBrutto, supra,* 114 *N.J.* at 204, 553 *A.*2d 335; *see State v. Dively,* 92 *N.J.* 573, 583 n. 7, 458 *A.*2d 502 (1983). Some of the other circumstances, other than intoxication, that are considered in relation to recklessness regardless of whether or not the operator was intoxicated are excessive speed, weather and lighting conditions, and known substantial safety defects in the motor vehicle or vessel. *See, e.g., DeLuca, supra,* 108 *N.J.* at 109, 527 *A.*2d 1355.

Subsection b of the statute focuses on the sentencing provisions for a second-degree vehicular homicide. That subsection mandates a minimum period of incarceration for a defendant convicted of vehicular homicide if that defendant is found by a judge, after conducting a hearing prescribed by *N.J.S.A.* 2C:11–5b(2), to have been intoxicated at the time of the offense. In order to better understand the critical issue raised, with respect to the sentence enhancement, we must give context to the procedural framework in which the issue is presented.

### B.

This is a typical case in which a defendant charged with vehicular homicide also is likely to be charged with DWI and other Title 39 offenses. To avoid double jeopardy based on "multiple punishments for the same offense," *DeLuca, supra,* 108 *N.J.* at 102, 527 *A.*2d 1355 (internal citations omitted), the vehicular homicide and the Title 39 offenses must be consolidated for disposition. A jury hears the indictable-vehicular homicide as well as lesser-included disorderly and petty disorderly persons offenses. *State v. Muniz,* 118 *N.J.* 319, 327–32, 571 *A.*2d 948 (1990). Although Title 39 offenses such as DWI and careless driving are lesser-included offenses of the indictable-vehicular homicide offense for the purposes of the Double Jeopardy Clause, they are heard by the judge presiding over the jury trial who must "base his or her decision on the proofs adduced in the course of the

[vehicular homicide] charge." *DeLuca, supra,* 108 *N.J.* at 111, 527 *A.*2d 1355; *Muniz, supra,* 118 *N.J.* at 331 n. 1, 571 *A.*2d 948. Nonetheless, a defendant is entitled to have the jury instructed, as occurred in this case, that there are lesser-included motor vehicle offenses for which the judge must decide defendant's guilt or innocence. *Muniz, supra,* 118 *N.J.* at 332, 571 *A.*2d 948; *State v. Brown,* 228 *N.J.Super.* 211, 224, 549 *A.*2d 462 (App.Div.1988), *rev'd on other grounds,* 118 *N.J.* 595, 573 *A.*2d 886 (1990). Consistent with the foregoing long-established policy and *Rule* 3:15–3, the jury in this case decided the vehicular homicide charge and the judge decided the Title 39 offenses, including the DWI. Needless to say, the judge applied the required beyond a reasonable doubt standard. *See State v. Emery,* 27 *N.J.* 348, 353, 142 *A.*2d 874 (1958).

Not infrequently, the State will rely on intoxication alone, or in combination with other circumstantial evidence, to establish the recklessness element of vehicular homicide. When intoxication is the sole basis to establish reckless operation of a motor vehicle or vessel before the jury, and if the jury convicts the defendant of vehicular homicide, the role of the judge in finding intoxication for sentence enhancement under *N.J.S.A.* 2C:11–5b(2) is simple. No hearing is required, for unless the judge accepts the jury's finding of intoxication, the jury verdict cannot stand and there can be no DWI conviction. *DeLuca, supra,* 108 *N.J.* at 111, 527 *A.*2d 1355.

But when a defendant is on trial for both vehicular homicide and DWI and the State relies on intoxication and other circumstantial evidence to establish recklessness, unless a special interrogatory is submitted to the jury, there is no way of knowing the basis for the jury's finding of recklessness. Under the existing law, no purpose would be served by special interrogatories. The recklessness element does not require juror unanimity when mixed evidence of recklessness is presented. *See, e.g., State v. Frisby,* 174 *N.J.* 583, 596–600, 811 *A.*2d 414 (2002); *State v. Camacho,* 153 *N.J.* 54, 69–72, 707 *A.*2d 455 (1998), *cert. denied,* 525 *U.S.* 864, 119 *S.Ct.* 153, 142 *L.Ed.*2d 125 (1998). Nor is a special interrogatory helpful in a

merger context for two reasons. First, merger is not required when there is mixed evidence of recklessness such as excessive speed and intoxication. *DeLuca, supra,* 108 *N.J.* at 109, 527 *A.*2d 1355; *State v. Baumann,* 340 *N.J.Super.* 553, 556–57, 775 *A.*2d 3 (App.Div.2001); *State v. Mara,* 253 *N.J.Super.* 204, 213–14, 601 *A.*2d 718 (App.Div.1992); *State v. Devlin,* 234 *N.J.Super.* 545, 553–54, 561 *A.*2d 280 (App.Div.), *certif. denied,* 117 *N.J.* 653, 569 *A.*2d 1348 (1989); *State v. Travers,* 229 *N.J.Super.* 144, 151, 550 *A.*2d 1281 (App.Div.1988). Second, even when the DWI merges with vehicular homicide, the sentencing court must nonetheless impose the DWI penalties. *State v. Wade,* 169 *N.J.* 302, 303, 777 *A.*2d 346 (2001); *Baumann, supra,* 340 *N.J.Super.* at 556–57, 775 *A.*2d 3, *Travers, supra,* 229 *N.J.Super.* at 150–51, 550 *A.*2d 1281.

Here, the State relied on mixed evidence to prove recklessness, and because there is no right to trial by jury on DWI and other Title 39 charges, *Blanton v. North Las Vegas,* 489 *U.S.* 538, 543–44, 109 *S.Ct.* 1289, 1293, 103 *L.Ed.*2d 550, 556 (1989); *State v. Hamm,* 121 *N.J.* 109, 112–30, 577 *A.*2d 1259 (1990), *cert. denied,* 499 *U.S.* 947, 111 *S.Ct.* 1413, 113 *L.Ed.*2d 466 (1991); *State v. Graff,* 121 *N.J.* 131, 135, 577 *A.*2d 1270 (1990), the trial judge decided the Title 39 offenses, except the DWI, immediately after the jury convicted defendant of vehicular homicide. The judge thereafter conducted the sentence enhancement hearing simultaneously with deciding the DWI charge. After finding defendant guilty of DWI, the judge used that finding of intoxication to impose the mandatory three-year term on the vehicular homicide conviction.

## III.

 Next, we consider whether the federal or New Jersey constitution requires the jury, rather than the judge, to make the determination whether defendant was intoxicated for sentence enhancement purposes. The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to

constitute the crime with which he is charged." *In re Winship,* 397 *U.S.* 358, 364, 90 *S.Ct.* 1068, 1073, 25 *L.Ed.*2d 368, 375 (1970). Although Article I of the New Jersey Constitution does not specifically enumerate the right to due process, it protects " 'values like those encompassed by the principle[s] of due process.' " *Doe v. Poritz,* 142 *N.J.* 1, 99, 662 *A.*2d 367 (1995) (internal citations omitted). The right to trial by jury of all serious crimes (indictable offenses in New Jersey) is guaranteed by the United States Constitution, art. III, § 2, cl. 3 and the Sixth Amendment, which has been made applicable to the states through the Fourteenth Amendment. *Duncan v. Louisiana,* 391 *U.S.* 145, 88 *S.Ct.* 1444, 20 *L.Ed.*2d 491 (1968).

■ A similar right to trial by jury is guaranteed under the New Jersey Constitution. *N.J. Const.,* art. I, ¶ 9. "Hence, an accused is constitutionally entitled to have a jury find each ... element [of the offense charged] beyond a reasonable doubt before he or she is convicted." *State v. Anderson,* 127 *N.J.* 191, 200, 603 *A.*2d 928 (1992). But there is no right to trial by jury of DWI or other Title 39 offenses because they are not deemed to be serious enough. *Blanton, supra,* 489 *U.S.* at 543–44, 109 *S.Ct.* at 1293, 103 *L.Ed.*2d at 556–57; *Hamm, supra,* 121 *N.J.* at 111, 577 *A.*2d 1259, *Graff, supra,* 121 *N.J.* at 135, 577 *A.*2d 1270. In view of those constitutional principles, the issue in this case is whether intoxication is truly a sentence enhancer under *N.J.S.A.* 2C:11–5b(2) or an element of vehicular homicide.

### A.

There is no litmus test for determining what is an element of a crime. Hence, we begin our analysis with the New Jersey Code of Criminal Justice, *N.J.S.A.* 2C:1–1 to 104–9 (Code). *N.J.S.A.* 2C:1–14h defines an element of an offense as follows:

"Element of an offense" means (1) such conduct or (2) such attendant circumstances or (3) such a result of conduct as

(a) Is included in the description of the forbidden conduct in the definition of the offense;

(b) Establishes the required kind of culpability;

(c) Negatives an excuse or justification for such conduct;

(d) Negatives a defense under the statute of limitations; or

(e) Establishes jurisdiction or venue.

[*Ibid.*]

The focus in this appeal respecting the vehicular homicide will be on *N.J.S.A.* 2C:1–14h(1), (2), (3)(a) and (b). Because the issue of whether a sentence enhancement factor should be decided by the jury is intertwined with whether such a factor is an element of the offense tried before the jury, an initial review of recent United States Supreme Court decisions in this area will be informative.

### B.

We disagree with Justice Zazzali's dissent concluding "that when the finding of any fact triggers imposition of a minimum period of imprisonment a jury must find that fact beyond a reasonable doubt." *Post* at 105, 820 *A.*2d at 655. Under that holding, he would invalidate many mandatory parole ineligibility statutes, including Vehicular Homicide, *N.J.S.A.* 2C:11–5b(1) and b(2); the Repeat Sex Offender Act, *N.J.S.A.* 2C:14–6; the Three Strikes Law, *N.J.S.A.* 2C:43–7.1a and 7.2; the Graves Act, *N.J.S.A.* 2C:43–6c; and the criteria for extended term sentences, *N.J.S.A.* 2C:44–3. His reliance on our State Constitution ignores six prongs of a seven-part standard "for determining when to invoke our State Constitution as an independent source for protecting individual rights." *State v. Hunt,* 91 *N.J.* 338, 363–68, 450 *A.*2d 952 (1982) (Handler, J., concurring). The dissent refers only to the textual language and does not analyze the legislative history, preexisting state law addressing sentence enhancement factors and parole ineligibility terms, structural differences between the federal and our State Constitutions, whether sentence enhancement and parole ineligibility are peculiar to New Jersey and do not require a uniform national policy, New Jersey's history and tradition of providing trial by jury where such a right does not exist at common law or by statute, or distinctive public attitudes, which are less important than the other six components. *Id.* at

362–68, 450 A.2d 952. Here, the dissenters' use of our State Constitution to require a jury trial on the issue of intoxication as a predicate to parole ineligibility "spring[s] from pure intuition ... rather [than] from a process that is reasonable and reasoned." *Id.* at 367, 450 A.2d 952.

We also disagree with the dissenters' reliance on this Court's decision in *Johnson, supra,* 166 *N.J.* 523, 766 A.2d 1126, to support their conclusion that a jury trial is required on all factual predicates for parole ineligibility terms. The reference in *Johnson* to the fact that a term of parole ineligibility is the " 'real time' " was intended by the Court merely to strengthen the constitutional doubt holding by demonstrating the difference between an eighty-five percent NERA term and other parole disqualifiers that are generally capped at fifty percent of the base term. *Id.* at 541, 766 A.2d 1126 (quoting *State v. Mosley,* 335 *N.J.Super.* 144, 157, 761 A.2d 130 (App.Div.2000), *certif. denied,* 167 *N.J.* 633, 772 A.2d 934 (2001)). To the extent that *Johnson* can be read in any way to suggest that jury trials are required on sentence enhancement factors when there is no constitutional doubt, we disavow that suggestion.

The dissent is based on the apparent belief that the sentence of three years without parole eligibility is too harsh. However, the Legislature has graded the crime committed by defendant second degree, and that represents "a legislative recognition of how harmful society perceives this crime to be." *State v. Thomas,* 166 *N.J.* 560, 575, 767 A.2d 459 (2001). In order to reach the unwarranted conclusion that *N.J.S.A.* 2C:11–5b(1) and b(2) are unconstitutional, the dissent mistakenly treats intoxication, which is a sentence enhancement factor, as if it were an element of second-degree vehicular homicide.

Similarly, we disagree with Justice Long's dissent in which she concludes that intoxication is an element of second-degree vehicular homicide. That conclusion is based on a self-created chart in which she describes the offense involved in the present case as an "enhanced second-degree vehicular homicide" that involves intoxi-

cation as an element. Such an offense is not designated in the Code. Judges and Justices are not permitted to create criminal offenses. The essence of her dissent is the same as that expressed by Justice Zazzali: that every sentence enhancement factor becomes an element of the offense that must be decided by a jury. Such a conclusion is not supported by federal or state law.

The United States Supreme Court has addressed the issue whether certain conduct is a sentence enhancement factor or an element of the offense. *McMillan v. Pennsylvania*, 477 *U.S.* 79, 91, 106 *S.Ct.* 2411, 2419, 91 *L.Ed.*2d 67, 79 (1986), involved a statute that designated "visible possession of a firearm" as a sentencing enhancement factor. That statute required the judge to impose a minimum term of five years if the enhancer was present. *Id.* at 81, 106 *S.Ct.* at 2413, 91 *L.Ed.*2d at 73. The Court held that the Constitution did not require Pennsylvania to treat the sentence enhancer as an element of the offense. *Id.* at 91, 106 *S.Ct.* at 2419, 91 *L.Ed.*2d at 79. The Court reasoned that "link[ing] the 'severity of punishment' to 'the presence or absence of an identified fact' " did not automatically make that fact an "element." *Id.* at 84–85, 106 *S.Ct.* at 2415, 91 *L.Ed.*2d at 75 (quoting *Patterson v. New York*, 432 *U.S.* 197, 214, 97 *S.Ct.* 2319, 2329, 53 *L.Ed.*2d 281, 294 (1977)). Significantly, the Court observed that "the state legislature's definition of the elements of the offense is usually dispositive[.]" *McMillan, supra*, 477 *U.S.* at 85, 106 *S.Ct.* at 2415, 91 *L.Ed.*2d at 75.

The Court in *Almendarez–Torres v. United States*, 523 *U.S.* 224, 118 *S.Ct.* 1219, 140 *L.Ed.*2d 350 (1998), recognized that Congress is best equipped to determine which factors are sentencing factors and which are elements of the offense. *Id.* at 228, 118 *S.Ct.* at 1223, 140 *L.Ed.*2d at 358. The *Almendarez–Torres* Court clearly rejected the "rule that any significant increase in a statutory maximum sentence would" [invoke the] constitutional 'elements' requirement. *Id.* at 247, 118 *S.Ct.* at 1232, 140 *L.Ed.*2d at 370.

A year later in *Jones v. United States*, 526 *U.S.* 227, 119 *S.Ct.* 1215, 143 *L.Ed.*2d 311 (1999), the Supreme Court began to

examine mandatory-minimum-sentencing statutes under the constitutional doubt doctrine. *Id.* at 229, 119 *S.Ct.* at 1217, 143 *L.Ed.*2d at 317. The constitutional doubt doctrine states that when possible, a statute will be interpreted so that it does not conflict with the Constitution. *Id.* at 239, 119 *S.Ct.* at 1222, 143 *L.Ed.*2d at 323; *United States ex rel. Attorney General v. Delaware & Hudson Co.,* 213 *U.S.* 366, 408, 29 *S.Ct.* 527, 536, 53 *L.Ed.* 836, 849 (1909). *Jones* concluded that when a statute can be construed in two ways, one of which creates constitutional questions and the other of which does not, a court is under a duty to adopt the interpretation that does not violate the constitution. *Jones, supra,* 526 *U.S.* at 239, 119 *S.Ct.* at 1222, 143 *L.Ed.*2d at 323.

The Court in *Jones* held that provisions of a carjacking statute that established higher penalties to be imposed when the offense resulted in serious bodily injury or death were not merely sentencing considerations but were additional elements of the offense. *Id.* at 233, 119 *S.Ct.* at 1219, 143 *L.Ed.*2d at 319. The Court stated that when a statute is unclear with respect to whether or not the factor is an element of the offense or a penalty aggravator, the Court should look to other federal and state statutes for guidance. *Id.* at 234–38, 119 *S.Ct.* at 1220–21, 143 *L.Ed.*2d at 320–23. The Court in *Jones* determined that, in other federal and state statutes, serious bodily injury was considered an element rather than a sentencing factor. *Id.* at 239, 119 *S.Ct.* at 1222, 143 *L.Ed.*2d at 323. Therefore, the Court held that serious bodily injury was an element a jury must find beyond a reasonable doubt. *Id.* at 251–52, 119 *S.Ct.* at 1228, 143 *L.Ed.*2d at 330–32.

Before the next case reached the Supreme Court, we decided *State v. Apprendi,* 159 *N.J.* 7, 731 *A.*2d 485 (1999), *rev'd,* 530 *U.S.* 466, 120 *S.Ct.* 2348, 147 *L. Ed.*2d 435 (2000). There, we had to determine whether our hate-crime sentence enhancer, *N.J.S.A.* 2C:44–3e, violated the Due Process Clause. Defendant pled guilty to two second-degree offenses of possession of a weapon for an unlawful purpose. *Apprendi, supra,* 159 *N.J.* at 10, 731 *A.*2d 485.

The ordinary sentence range for those offenses was between five and ten years. *N.J.S.A.* 2C:43–6a(2). The statute permitted an enhanced sentence in any case in which "[t]he defendant in committing the crime acted with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity." *N.J.S.A.* 2C:44–3e.[1] That sentence enhancer exposed the defendant to a sentence that could double the ordinary sentence for those offenses. We held that because the hate-crime statute resembles *McMillan,* our "statute plainly does not transgress the limits set out in *Patterson* [regarding] due process of law.... There is simply no indication that the legislature restructured its criminal code and sentencing structures in an attempt to 'evade' the commands of *Winship, supra.*" *Apprendi, supra,* 159 *N.J.* at 23–24, 731 *A.*2d 485. "A finding of biased motive or purpose to intimidate ... is a very traditional sentencing factor." *Id.* at 24, 731 *A.*2d 485. A dissenting member of the Court, however, concluded that because the sentence enhancer focused on the defendant's mental state at the time of the offense and was so "integral" to it, "it must be characterized as an element thereof." *Id.* at 30, 731 *A.*2d 485 (Stein, J., dissenting).

The Supreme Court granted certiorari in *Apprendi v. New Jersey* and decided the case in 2000. 530 *U.S.* 466, 120 *S.Ct.* 2348, 147 *L.Ed.*2d 435. The Court held that our hate-crime statute is unconstitutional because the motive required for enhancing the penalty was essentially an element. *Apprendi, supra,* 530 *U.S.* at 492–93, 120 *S.Ct.* at 2364, 147 *L.Ed.*2d at 456–57. The Court in *Apprendi* concluded that by increasing the defendant's maximum sentencing exposure based on a judge's finding under a preponderance of the evidence standard, the hate-crime statute violated the defendant's due process. *Ibid.* The Court also held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum

[1] This section of the statute was deleted by amendment P.L.2001, *c.* 443.

must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490, 120 *S.Ct.* at 2362–63, 147 *L.Ed.*2d at 455. The Court expressly stated that it was not overruling *McMillan* but "limit[ing] its holding to cases that do not involve the imposition of a sentence more severe than the statutory maximum for the offense established by the jury's verdict—a limitation identified in the *McMillan* opinion itself." *Apprendi, supra,* 530 *U.S.* at 487 n. 13, 120 *S.Ct.* at 2361 n. 13, 147 *L.Ed.*2d at 453 n. 13.

The Supreme Court's decision in *Apprendi* created a quagmire of unanswered questions in respect of whether trial judges are permitted to determine sentence enhancement factors. Indeed, this Court in *Johnson, supra,* 166 *N.J.* at 540, 766 *A.*2d 1126, found that *Apprendi* had created constitutional doubt regarding our No Early Release Act, *N.J.S.A.* 2C:43–7.2 (NERA), that "provides for mandatory minimum sentences for convictions constituting 'violent crimes' as defined by that statute." *Johnson, supra,* 166 *N.J.* at 527, 766 *A.*2d 1126. We observed that although no direct constitutional question was presented in *Johnson,* as the parties had suggested, a question of statutory interpretation was presented, and "depending on how we interpret subsection (e) of NERA, could raise constitutional concerns" under the decisions of the United States Supreme Court. *Id.* at 540, 766 *A.*2d 1126. "If we interpret subsection (e) to require a jury to make the 'violent crime' finding beyond a reasonable doubt, we will have allayed any concern that NERA violates the *Winship* doctrine." *Ibid.* Consequently, we held that

[b]ecause of the uncertainty expressed by the U.S. Supreme Court respecting the continuing vitality of *McMillan,* and the broad understanding of 'punishment' recognized by this Court, we will construe subsection (e) of NERA to require that the 'violent crime' condition must be submitted to a jury and found beyond a reasonable doubt. To do otherwise would be to subject NERA to constitutional challenge.

[*Id.* at 543–44, 766 *A.*2d 1126 (footnote omitted).]

In an apparent attempt to stem the confusion occurring across the country in the aftermath of *Apprendi* with respect to whether *McMillan* had been overturned, the Supreme Court granted certiorari in *Harris, supra,* and decided the case on June 24, 2002.

536 *U.S.* 545, 122 *S.Ct.* 2406, 153 *L.Ed.*2d 524. The defendant in *Harris* was convicted for drug trafficking under 18 *U.S.C.A.* § 924(c)(1)(A), which provided that a person who uses or carries a firearm during a drug trafficking crime, "shall, in addition to the punishment . . . (i) be sentenced to a term of imprisonment of not less than five years; (ii) if the firearm is brandished, be sentenced to . . . not less than 7 years; and (iii) if the firearm is discharged, to be sentenced to . . . not less than 10 years." *Harris, supra,* 536 *U.S.* at 550–51, 122 *S.Ct.* at 2410–11, 153 *L.Ed.*2d at 533. The Supreme Court held that subsection 924(c)(1)(A) defines a single offense and thus "brandishing" or "discharging" a firearm were sentencing factors that did not require a finding by a jury, but could be determined by the judge. *Harris, supra,* 536 *U.S.* at 556, 122 *S.Ct.* at 2414, 153 *L.Ed.*2d at 537. The Court reaffirmed *McMillan* in the following clear language:

> *McMillan* and *Apprendi* are consistent because there is a fundamental distinction between the factual findings that were at issue in those two cases. *Apprendi* said that any fact extending the defendant's sentence beyond the maximum authorized by the jury's verdict would have been considered an element of an aggravated crime—and thus the domain of the jury—by those who framed the Bill of Rights. The same cannot be said of a fact increasing the mandatory minimum (but not extending the sentence beyond the statutory maximum), for the jury's verdict has authorized the judge to impose the minimum with or without the finding. As *McMillan* recognized, a statute may reserve this type of factual finding for the judge without violating the Constitution.
>
> [*Ibid.*]

The *Harris* Court thus retreated from the position it seemingly had taken in *Apprendi* wherein the Court appeared to move away from a long tradition of sentencing jurisprudence that restricted the role of the jury to determining the elements of the offense charged and leaving it to the legislature to structure judicial sentencing. In that respect, the Court stated:

> That a fact affects the defendant's sentence, even dramatically so, does not by itself make it an element.
>
> . . .
>
> Read together, *McMillan* and *Apprendi* mean that those facts setting the outer limits of a sentence, and of the judicial power to impose it, are the elements of the crime for the purposes of the constitutional analysis. Within the range authorized by the jury's verdict, however, the political system may channel judicial discre-

tion—and rely upon judicial expertise—by requiring defendants to serve minimum terms·after judges make certain factual findings. It is critical not to abandon that understanding at this late date. Legislatures and their constituents have relied upon *McMillan* to exercise control over sentencing through dozens of statutes like the one the Court approved in that case.... We see no reason to overturn these statutes or cast uncertainty upon the sentences imposed under them.

[*Id.* at 567–68, 122 *S.Ct.* at 2419–20, 153 *L.Ed.*2d at 544–45.]

Now that constitutional doubt has been removed from the analysis, which was part of defendant's Due Process Clause claim, we must now decide whether intoxication was an element of vehicular homicide.

## IV.

 Given the absence of any litmus test for determining the elements of a particular offense, we turn again to the Code. *N.J.S.A.* 2C:1–14h instructs that we first examine the statute that makes certain conduct an offense. A vehicular homicide is defined as the death of another person that "is caused by driving a [motor] vehicle or vessel recklessly." *N.J.S.A.* 2C:11–5a. As such, that second-degree offense has three elements: 1) that the defendant operated a motor vehicle or vessel, 2) that the defendant's operation of that motor vehicle or vessel caused the death of another person, and 3) that the death of the victim was caused by the defendant's reckless operation of the motor vehicle or vessel. *See, e.g., Casele, supra,* 198 *N.J.Super.* at 472, 487 *A.*2d 765. "[P]roof of defendant's intoxication (or blood alcohol concentration) [is] a fact not required for the proof of [vehicular homicide], *N.J.S.A.* 2C:11–5." *DeLuca, supra,* 108 *N.J.* at 108, 527 *A.*2d 1355. Rather than being an element of the offense, intoxication was used in this case as "a mere circumstance to be considered in determining whether" defendant had acted recklessly. *Wilson v. State,* 60 *N.J.L.* 171, 184, 37 *A.* 954 (E. & A. 1897). Not only was intoxication not an element of vehicular homicide, unlike some offenses, it could not have been used in this case to "[negate] an element of the [vehicular homicide] offense." *N.J.S.A.* 2C:2–8a; *State v. Cameron,* 104 *N.J.* 42, 51, 514 *A.*2d 1302 (1986). As the Supreme Court observed in *Harris,* the fact that intoxication

"affects the defendant's sentence, even dramatically so, does not by itself make it an element." *Harris, supra,* 536 *U.S.* at 566, 122 *S.Ct.* at 2419, 153 *L.Ed.*2d at 544. Moreover, intoxication does not increase the penalty for vehicular homicide beyond the statutory maximum prescribed for that offense.

## V.

Justice Albin in Part I of his dissent has mistakenly concluded that DWI is a lesser-included offense of vehicular homicide in order to justify his conclusion that defendant is entitled to a jury trial on DWI and reckless driving. That dissent fails to recognize that our law draws a distinction between, on the one hand, consolidating DWI and other Title 39 offenses with indictable offenses under the Code to avoid the bar of the Double Jeopardy Clause and, on the other hand, classifying DWI and other Title 39 offenses as lesser-included offenses of indicted Code offenses under *N.J.S.A.* 2C:1–8 so as to trigger a right to trial by jury. The blurring of that distinction by the dissent is contrary to the express will of the Legislature for more than three-quarters of a century and the constitutional jurisprudence of this State.

Not only was there no request to charge the jury that it had to decide the Title 39 offenses, the judge instructed the jury without objection that the judge would decide them. Consistent with what always has been our law, the court instructed the jury "that there are motor vehicle charges now pending against the defendant. The law requires that I alone decide those motor vehicle charges and I will do so after you have returned your verdict. Obviously your verdict should not depend on how you think I would decide the motor vehicle charges." The jury trial issue was not raised in the Appellate Division. That issue was raised, for the first time, during the post-*Harris* oral argument, and even then, it was restricted to an assumption that intoxication is an element of vehicular homicide. Point I of Justice Albin's dissent, however, does not depend on a finding that intoxication is an element of vehicular homicide and therefore must be decided by a jury. His

*sua sponte* conclusion that DWI and other Title 39 offenses should be decided by the jury impaneled to try the vehicular homicide "converts us from the Court of last resort . . . to some sort of super rescue-mission." *Whitfield v. Blackwood,* 101 *N.J.* 500, 501, 502 *A.*2d 1132 (1986) (Clifford, J., concurring).

Historically, one accused of an indictable offense in New Jersey has a constitutional right to an indictment by a grand jury, *N.J. Const.* art. I, ¶ 8, and if indicted, to a trial by an impartial petit jury. *N.J. Const.* art. I, ¶ 9; *State v. Maier,* 13 *N.J.* 235, 250, 99 *A.*2d 21 (1953). Motor vehicle offenses such as DWIs fall within the generic category of petty offenses that do not fit within the Code's definition of a lesser-included criminal offense. *See N.J.S.A.* 2C:1–14k; *In re Buehrer,* 50 *N.J.* 501, 517–19, 236 *A.*2d 592 (1967).

The rationale at common law for lesser-included criminal offenses being covered by an indictment is based on the notion that the grand jury considered the lesser offense as an ingredient of the greater criminal offense. *State v. Johnson,* 30 *N.J.L.* 185, 186 (Sup.Ct.1862). The lesser-included criminal offense must be of "the same general character as that charged" in the indictment. *Ibid.* In other words, the lesser-included criminal offense must be for a lower-degree offense that "is necessarily included in the higher one charged in the indictment," *State v. Staw,* 97 *N.J.L.* 349, 350, 116 *A.* 425 (E. & A.1922) (citation omitted), or a "necessary ingredient" of the indicted offense, *State v. Talley,* 94 *N.J.* 385, 388, 466 *A.*2d 78 (1983). Hence, by 1942 there was a "well-established rule that the accused may be convicted of any crime of a lesser grade or degree, provided it is an ingredient of the greater offense alleged [in the indictment] and is therefore included therein." *State v. Newman,* 128 *N.J.L.* 82, 84, 24 *A.*2d 206 (Sup.Ct.1942) (citation omitted). The foregoing common law rationale was adopted in the pre-Code case of *State v. Saulnier,* 63 *N.J.* 199, 205, 306 *A.*2d 67 (1973), holding that "a defendant may be found guilty of a lesser [criminal] offense . . . included in the greater offense charged in the indictment. . . ."

The Code embodies the statutory and common law with respect to criminal offenses. Title 39, on the other hand, of which DWI is a part, is referred to as "Motor Vehicles and Traffic Regulation." *N.J.S.A.* 39:1-1 to:13-8. DWI is proscribed at *N.J.S.A.* 39:4-50 and it is a part of Article 9 that relates to "Operation of or Acts Affecting Operation of Vehicles and Street Cars." In contrast, the Code relates to criminal conduct exclusively. Toward that end, the Code establishes a framework for prosecuting multiple criminal offenses. It provides that "[w]hen the same [criminal] conduct of a defendant may establish the commission of more than one [criminal] offense, the defendant . . . may not . . . be convicted of more than one offense if . . . [o]ne offense is included in the other, as defined in subsection d. of this section." *N.J.S.A.* 2C:1-8a(1). Subsection d states: "A defendant may be convicted of [a criminal] offense included in an offense charged whether or not the included offense is an indictable [criminal] offense." *N.J.S.A.* 2C:1-8d. Subsection e instructs the trial court not to "charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included [criminal] offense." *N.J.S.A.* 2C:1-8e. Clearly, all of *N.J.S.A.* 2C:1-8 applies to criminal offenses and not traffic-regulatory offenses.

The Code classifies three types of criminal offenses: 1) crimes of the first, second, third and fourth degree, 2) disorderly persons offenses, and 3) petty disorderly persons offenses. *N.J.S.A.* 2C:1-4a and b. Some of the crimes, disorderly persons and petty disorderly persons offenses are defined in statutes of this State outside the Code. When such statutes outside the Code declare a criminal offense to be a misdemeanor and "provides a maximum penalty of six months' imprisonment or less, . . . such provision shall constitute a disorderly persons offense." *N.J.S.A.* 2C:1-4c. Generally, when other non-Code criminal offenses are described as misdemeanors without specifying a maximum term of imprisonment, those offenses "constitute for purpose of sentence a crime of the fourth degree." *N.J.S.A.* 2C:43-1b; *N.J.S.A.* 2C:1-5b. Non–Code criminal offenses "designated as a high misdemeanor shall

constitute for the purpose of sentence a crime of the third degree." *N.J.S.A.* 2C:43–1b.

Although DWI was a misdemeanor when first enacted, *L.* 1909, *c.* 127, it was reduced to a disorderly persons offense four years later. *L.* 1913, *c.* 67; *State v. Hamm, supra,* 121 *N.J.* at 119, 577 *A.*2d 1259. Finally, in 1921 "the Legislature downgraded DWI to a motor-vehicle offense, reaffirming and expanding the penalties in the 1913 law. *L.* 1921, *c.* 208, § 14(3), p. 665." *Hamm, supra,* 121 *N.J.* at 120, 577 *A.*2d 1259. Consequently, since 1921, DWI and other Title 39 offenses have been characterized as "petty offenses." *State v. Senno,* 79 *N.J.* 216, 223, 398 *A.*2d 873 (1979); *State v. Macuk,* 57 *N.J.* 1, 9, 268 *A.*2d 1 (1970). For example, this Court stated half a century ago that reckless driving violated a regulatory code and was not an offense within the contemplation of the New Jersey constitutional double jeopardy provision. *State v. Shoopman,* 11 *N.J.* 333, 340, 94 *A.*2d 493 (1953). Thus, "[t]he legislative and judicial history of DWI in New Jersey shows ... its consistent treatment as a non-criminal offense." *Hamm, supra,* 121 *N.J.* at 129, 577 *A.*2d 1259.

The Code provides that "[t]he provisions of the Code not inconsistent with those of prior laws shall be construed as a continuation of such laws." *N.J.S.A.* 2C:1–1e. Guided by that rule of construction, we reaffirm our view that under the plain language of the Code, DWI and other Title 39 offenses are not "included criminal offenses." In view of the legislative policy reflected in the Code and in Title 39 "with respect to the joinder of lesser-included offenses, the Code standards do not permit, and the common-law policies do not require, the ... submission to and disposition by a jury of motor vehicles violations in conjunction with its determination of offenses under the Code" when Title 39 offenses are consolidated with an indictable offense for trial. *Muniz, supra,* 118 *N.J.* at 331–32, 571 *A.*2d 948.

DWI and other Title 39 offenses are consolidated for trial with indicted offenses, not because they are lesser-included criminal offenses of the crimes charged in an indictment, but because our

jurisprudence and *Rule* 3:15–3(a)(1) require consolidation of even Title 39 offenses to avoid double jeopardy problems. *State v. DeLuca, supra,* 108 *N.J.* at 102–111, 527 *A*.2d 1355; *State v. Dively, supra,* 92 *N.J.* at 578, 458 *A*.2d 502. When consolidation of criminal offenses is required to avoid double jeopardy problems, the jury must decide lesser–included crimes as well as disorderly and petty disorderly persons offenses because they are criminal offenses and it is presumed that the grand jury would have intended to include them within the four corners of the indictment. Viewed in that context, the indictment provides sufficient notice to the defendant. The same fact finder, the jury in a jury trial, must decide all of the criminal offenses—the indicted and the lesser-included criminal offenses—as required by the Code. *N.J.S.A.* 2C:1–8d and e; *R.* 3:15–3(a)(2).

Requiring consolidation of all offenses for trial that are "based on the same conduct or arising from the same episode," *R.* 3:15–3(a), to avoid double jeopardy problems, is not dispositive of whether the jury hearing the indicted offense or the presiding judge should decide the lesser offense. Although *Dively, supra,* 92 *N.J.* at 586, 458 *A*.2d 502, held that motor vehicular violations are subject to the Double Jeopardy Clause, that case did not indicate who should decide the Title 39 offenses after consolidation with the indicted offense. The Court in *DeLuca* acknowledged that various procedures had been suggested for handling "the death-by-auto charge, which may be tried before a jury and the DWI charge, as to which there is no right to trial by jury." *DeLuca, supra,* 108 *N.J.* at 111, 527 *A*.2d 1355. Based on the absence of a constitutional right to trial by jury on the DWI offense, the Court protected the constitutional right to trial by jury on the death-by-auto and required the presiding judge to decide the Title 39 offense just as a municipal court judge would. *Ibid.* That principle was reaffirmed two and a half years later in *Muniz, supra,* 118 *N.J.* at 331–32, 571 *A*.2d 948. That was a reasonable and efficient accommodation that implements a defendant's constitutional right to trial by jury. As noted previously, because Title 39 offenses are afforded double jeopardy protection,

they must be consolidated with indicted offenses, but they are not lesser-included offenses under *N.J.S.A.* 2C:1–8.

Recognizing the need to retain separation between two competing constitutional strains, *see State v. Johnson,* 171 *N.J.* 192, 205, 793 *A.*2d 619 (2002); *State v. Welsh,* 84 *N.J.* 346, 354, 419 *A.*2d 1123 (1980), the Court in *DeLuca* and *Muniz* enforced the Double Jeopardy Clause without imposing a new requirement of a right to trial by jury for Title 39 offenses when no such right has existed at least since 1913 when DWI was downgraded from a misdemeanor to a disorderly persons offense. Unlike the dissent, we believe that " '[l]aws, like houses, lean on one another.' " *State v. Papasavvas,* 170 *N.J.* 462, 522, 790 *A.*2d 798 (2002) (Coleman, J., dissenting) (quoting Edmund Burke, *Tracts Relating to Popery Laws* (1765), reprinted in IX *The Writings and Speeches of Edmund Burke* 452, 453 (Paul Langford et al. eds.1991)). The dissent's conclusion that there should be a jury trial on the Title 39 offenses has no foundation in our Constitution, the jurisprudence of this Court, *Rule* 3:15–3, or legislative enactments. Hence, the dissent's conclusion represents a drastic and an unwarranted departure from the existing law. Any change in the law to require trial by jury on DWI and other Title 39 offenses "should properly be by legislative, rather than judicial, judgment." *Hamm, supra,* 121 *N.J.* at 129, 577 *A.*2d 1259.

## VI.

We conclude, therefore, that because there is no right to trial by jury on a DWI offense or on the issue of intoxication for sentence enhancement purposes, because there is substantial credible evidence in the record to support the judge's determination of intoxication, and because there is no constitutional doubt following *Harris,* the Appellate Division erred in vacating the three-year term of parole ineligibility.

The judgment of the Appellate Division is reversed and the judgment of the Law Division is reinstated.

LONG, J., dissenting.

Whatever else may be encompassed within the notion of "element of an offense," it must, as a matter of logic and common sense incorporate a description of the forbidden conduct. *N.J.S.A.* 2C:11–5 sets forth three entirely separate vehicular homicide offenses, each describing different conduct that the Legislature sought to interdict. The constituent elements of each of those offenses are as follows:

| Offense | Elements |
|---|---|
| First-degree vehicular homicide (10–20 year term) | 1. Causing death<br>2. Driving a vehicle recklessly<br>3. While intoxicated or while license revoked<br>4. On school property or a school crossing |
| Enhanced second-degree vehicular Homicide (5–10 year term with a mandatory three-year parole disqualifier) | 1. Causing Death<br>2. Driving a vehicle recklessly<br>3. While intoxicated or while license revoked |
| Second-degree vehicular homicide (5–10 year term) | 1. Causing Death<br>2. Driving a vehicle recklessly |

As is evident from that diagram, the statute describes three discrete offenses on an escalating scale of seriousness. The level of seriousness is directly related to the accelerating egregiousness of the defendant's conduct. That conduct, in turn, is expressed by the number of elements in each offense. The ordinary second-degree offense has two elements—causing death and driving recklessly; the enhanced second-degree offense with mandatory parole ineligibility adds a third—intoxication; and the first-degree offense adds a fourth—school premises. The substance of the scheme could not be clearer, yet the Court allows the Legislature to wink and call intoxication in the enhanced second-degree offense a sentencing factor, thus removing it from the jury's ambit.

At the very least, and as a matter of ordinary statutory interpretation, when a term is used more than once in a statute, it

should have the same meaning and status in both places. Because it is conceded that intoxication is an element of the first-degree offense, how can it not be an element of the enhanced second-degree offense? The result is that a defendant charged with first-degree vehicular homicide, is entitled to a jury determination on intoxication whereas a defendant charged with enhanced second-degree vehicular homicide is not. There is no logical justification for such a scheme.

One final note, the majority's suggestion that I have impermissibly "created" a criminal offense in my structural dissection of *N.J.S.A.* 2C:11–5 is wide of the mark. Every act of statutory interpretation, the point of which is eschewing formalism in favor of substance, is exactly such a "creation." That is what we are here for—to strip away artifice and lay bare the statutory scheme for what it is.

For the reasons I have expressed, I therefore dissent, joining my colleagues Zazzali and Albin.

Justices ZAZZALI and ALBIN join in this dissent.

ZAZZALI, J., dissenting.

The State may not subject a citizen to criminal punishment unless it affords that citizen a trial by jury in which guilt is proved beyond a reasonable doubt. Because I believe that the majority has denied that right in this appeal, I respectfully dissent.

Today, one year after the Appellate Division vacated defendant's parole disqualifier, the Court orders her back to prison to serve a twenty-six month term of incarceration. That term represents the balance of the three-year mandatory minimum sentence imposed as a result of the trial court's determination that defendant was intoxicated when she committed vehicular homicide. Because a jury did not make that finding beyond a reasonable doubt, I believe that defendant's imminent re-incarceration violates the jury trial protections of our State Constitution.

Consistent with the sentiments expressed by this Court in *State v. Johnson*, 166 *N.J.* 523, 766 *A.*2d 1126 (2001), as well as the

broader protections we traditionally have afforded defendants under article 1, paragraphs 9 and 10 of the New Jersey Constitution, I would hold that when the finding of any fact triggers imposition of a minimum period of imprisonment a jury must find that fact beyond a reasonable doubt. Accordingly, I would hold unconstitutional on its face *N.J.S.A.* 2C:11–5b(2), the statutory provision that sets forth the procedures by which the three-year mandatory minimum term at issue is imposed.

I

The right to trial by jury is "one of the most cherished rights in the long history of our Anglo–American jurisprudence." *State v. Ingenito,* 87 *N.J.* 204, 210, 432 *A.*2d 912 (1981). It encompasses fundamental principles of fairness and due process that circumscribe a state's power to punish criminal conduct. *In re Winship,* 397 *U.S.* 358, 364, 90 *S.Ct.* 1068, 1073, 25 *L.Ed.*2d 368, 375 (1970) (holding that Due Process Clause of Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime for which he is charged"); *State v. Anderson,* 127 *N.J.* 191, 200, 603 *A.*2d 928 (1992)(noting that jury trial right is intertwined with right to due process of law); *Ingenito, supra,* 87 *N.J.* at 216 n. 5, 432 *A.*2d 912 (stating that "many of the concerns we have expressed in the jury context implicate broader due process concerns"). More specifically, it grants the criminally accused the right to have a jury determine whether the prosecution has proved beyond a reasonable doubt all of the facts to which criminal liability attaches. *Anderson, supra,* 127 *N.J.* at 200–01, 603 *A.*2d 928; *Ingenito, supra,* 87 *N.J.* at 213, 432 *A.*2d 912. Because the jury trial right is the paramount restraint on the government's broad power to punish, we long have held that the severity of the punishment authorized by law is the "only reliable test" for determining when that right attaches.[2] *State v. Owens,* 54 *N.J.*

---

[2] Under the New Jersey Constitution the accused is entitled to a jury trial whenever the legislatively prescribed punishment exceeds a six-month term of

153, 160, 254 *A.*2d 97 (1969), *cert. denied, Owens v. New Jersey,* 396 *U.S.* 1021, 90 *S.Ct.* 593, 24 *L.Ed.*2d 514 (1970). *See Anderson, supra,* 127 *N.J.* at 205–06, 603 *A.*2d 928; *State v. Hamm,* 121 *N.J.* 109, 112, 577 *A.*2d 1259 (1990), *cert. denied, Hamm v. New Jersey,* 499 *U.S.* 947, 111 *S.Ct.* 1413, 113 *L.Ed.*2d 466 (1991); *Ingenito, supra,* 87 *N.J.* 204, 213–14, 432 *A.*2d 912 (1981); *In re Buehrer,* 50 *N.J.* 501, 517–18, 236 *A.*2d 592 (1967).

We recently emphasized the constitutional significance of punishment in *Johnson.* In that case, we suggested that the proper benchmark for ascertaining whether a defendant's jury trial right attaches is the length of the prison term, or "real time," imposed pursuant to a mandatory minimum sentence. *Johnson, supra,* 166 *N.J.* at 541–42, 766 *A.*2d 1126. By adopting the reasoning of *Harris v. United States,* 536 *U.S.* 545, 122 *S.Ct.* 2406, 153 *L.Ed.*2d 524 (2002), however, the majority has abandoned this Court's focus on a defendant's "real time."

The majority bases its denial of the jury trial right in part on its classification of intoxication as a sentencing factor rather than as an element of an offense. *Ante* at 97–98, 820 *A.*2d at 650. Similarly, the majority endorses the *Harris* plurality's distinction between factual findings that increase a defendant's maximum possible punishment, as in *Apprendi v. New Jersey,* 530 *U.S.* 466, 120 *S.Ct.* 2348, 147 *L.Ed.*2d 435 (2000), from those that trigger a mandatory minimum term of imprisonment, as in *McMillan v. Pennsylvania,* 477 *U.S.* 79, 106 *S.Ct.* 2411, 91 *L.Ed.*2d 67 (1986). *Ante* at 95–97, 820 *A.*2d at 649–650. Because the severity of the punishment imposed is the proper measure of whether the jury

incarceration. *State v. Hamm,* 121 *N.J.* 109, 112, 577 A.2d 1259 (1990), *cert. denied, Hamm v. New Jersey,* 499 *U.S.* 947, 111 *S.Ct.* 1413, 113 *L.Ed.*2d 466 (1991); *State v. Owens,* 54 *N.J.* 153, 162, 254 A.2d 97 (1969), *cert. denied, Owens v. New Jersey,* 396 *U.S.* 1021, 90 *S.Ct.* 593, 24 *L.Ed.*2d 514 (1970). Thus, a mandatory minimum prison term of six months or less would not implicate a defendant's right to trial by jury.

trial right attaches, I find no principled basis for such distinctions. *See Johnson, supra,* 166 *N.J.* at 541–42, 766 *A.*2d 1126.

In *Harris,* a majority of the Supreme Court consisting of Justice Breyer and four dissenting Justices expressly rejected the view that a mandatory minimum term triggers any less constitutional scrutiny than an enhanced maximum term in respect of the right to a jury trial. Although Justice Breyer concurred in the *Harris* Court's judgment that a fact that triggers a mandatory minimum generally does not need to be proved to a jury beyond a reasonable doubt, his concurrence was consistent with his dissenting opinion in *Apprendi.* In that dissent, he argued that jury trial protections should not necessarily attach to proof of facts that *extend* a defendant's permissible sentencing range. *See Apprendi, supra,* 530 *U.S.* at 561, 120 *S.Ct.* at 2400, 147 *L.Ed.*2d at 498 (Breyer, J., dissenting). Thus, Justice Breyer would withhold the protection of a jury trial irrespective of whether a mandatory minimum or an extended maximum term is implicated. *Harris, supra,* 536 *U.S.* at 567–68, 122 *S.Ct.* at 2420, 153 *L.Ed.*2d at 544 ("I cannot agree with the plurality's opinion insofar as it finds such a distinction [between *Apprendi* and *Harris* ].")(Breyer, J., concurring in part and concurring in the judgment); *see also Apprendi, supra,* 530 *U.S.* at 563–64, 120 *S.Ct.* at 2401, 147 *L.Ed.*2d at 500 ("I do not understand why, when a legislature *authorizes* a judge to impose a higher penalty ... a new crime is born; but where the legislature *requires* a judge to impose a higher penalty than he otherwise would (within a preexisting statutory range) based on similar criteria, it is not.")(Breyer, J., dissenting). Justice Thomas, joined in dissent in *Harris* by Justices Stevens, Souter, and Ginsburg, also rejected the plurality's distinction between those factual predicates that extend the outer limit of a sentence and those that trigger a mandatory minimum prison term. *Harris, supra,* 536 *U.S.* at 574, 122 *S.Ct.* at 2423, 153 *L.Ed.*2d at 549. ("[S]uch fine distinctions with regard to vital constitutional liberties cannot withstand close scrutiny.")(Thomas, J., dissenting). Thus, in contrast to the majority in this appeal, a majority of the *Harris* Court would decline to condition the right to a jury trial on

whether a criminal statute provides for a mandatory minimum or an extended maximum term.

II

On more than one occasion, this Court has demonstrated its willingness to extend the jury trial right to resolve uncertainties and to mitigate limitations created by the Supreme Court's jurisprudence. In *State v. Gilmore*, for example, we held that the defendant's right to a fair and impartial jury prohibited the prosecutor from using his peremptory challenges in a racially discriminatory manner. 103 *N.J.* 508, 528–29, 511 *A.*2d 1150 (1986). We looked to our State Constitution because the Supreme Court expressly declined to consider whether such a practice violated the defendant's federal right to a jury trial. *Id.* at 522, 511 *A.*2d 1150. In so doing, we noted that recourse to the State Constitution's jury trial provisions was justified in part because the scope of federal constitutional protections under the Equal Protection Clause of the Fourteenth Amendment was uncertain. *Ibid.* In *Anderson, supra,* we overturned a criminal perjury conviction as a violation of the defendant's state constitutional right to trial by jury. 127 *N.J.* 191, 603 *A.*2d 928. In the face of well-settled federal law that suggested a contrary result, we held that the practice of allowing the trial court, rather than the jury, to determine the materiality of perjured testimony violated our State Constitution. *Id.* at 204–05, 603 *A.*2d 928. In reaching that conclusion we noted that a majority of federal courts had not set forth adequate rationales for their contrary holdings. *Ibid.*

When, as in this appeal, the basis for the applicable federal law is both uncertain and unpersuasive we should not hesitate to reach an independent conclusion under our State Constitution. As Justice Pashman stated, "[t]he simplest but perhaps most compelling reason for extending state constitutional rights beyond their federal counterparts is that it strengthens the constitutional safeguards of fundamental liberties." *State v. Hunt,* 91 *N.J.* 338, 355, 450 *A.*2d 952 (1982) (Pashman, J., concurring). In the absence of

a principled justification, I would not permit the Legislature to exempt select facts from jury scrutiny when the finding of those facts results in a significant term of imprisonment. Accordingly, I would hold that once the Legislature determines that a single fact triggers a specific amount of punishment that fact must be charged to a jury and proved beyond a reasonable doubt.

### III

The State argues that the rule I propose could be read to entitle defendants to a jury trial on all factors that affect the length of a sentence. I note, however, that a mandatory minimum term, such as that imposed pursuant to *N.J.S.A.* 2C:11-5b(1)–(2), differs significantly, for example, from a sentence adjusted pursuant to the guidelines set forth in our Criminal Code. Under *N.J.S.A.* 2C:44-1, a trial court that considers aggravating and mitigating circumstances at sentencing examines and balances numerous factors to make a cumulative assessment that results in a sentence within a prescribed statutory range. *See State v. Roth,* 95 *N.J.* 334, 359–60, 471 *A.*2d 370 (1984). In that process, no single factor unconditionally alters the range of punishment to which the defendant is exposed. Similarly, a factual finding leading to the imposition of a mandatory minimum differs significantly from a trial court's decision whether to impose a consecutive rather than concurrent sentence under *N.J.S.A.* 2C:44-5a. Pursuant to that statute, the trial court must focus on the nature and circumstances of multiple convictions based on the guidelines established by this Court in *State v. Yarbough,* 100 *N.J.* 627, 498 *A.*2d 1239 (1985), *cert. denied, Yarbough v. New Jersey,* 475 *U.S.* 1014, 106 *S.Ct.* 1193, 89 *L.Ed.*2d 308 (1986). Under *Yarbough,* the trial court grounds its determination in the relationship between the various offenses, rather than any particular species of implicated conduct. *See id.* at 642–45, 498 *A.*2d 1239.

Finally, my proposed holding would not preclude the Legislature from creating future mandatory minimum penalties. It simply would require juries, rather than judges, to make the

requisite factual findings that trigger the imposition of mandatory minimums. Such a rule would hamper neither the Legislature's prerogative to define crimes nor its capacity to impose punishment.

## IV

In conclusion, because federal law in this area is uncertain and unpersuasive, I would hold that *N.J.S.A.* 2C:11–5b(2) violates our State Constitution. I would extend the jury trial right to require that any fact that results in imposition of a mandatory minimum term of imprisonment must be proved to a jury beyond a reasonable doubt. The right to trial by jury should not depend on whether the Legislature has declared that a finding of a particular fact will result in an enhanced maximum sentence, rather than in a mandatory minimum. Nor should it turn on an equally arbitrary distinction between sentencing factors and elements. As a matter of state constitutional law, our analysis must begin and end with the degree of punishment that the Legislature conditions on a specific factual determination. I therefore would affirm the Appellate Division on state constitutional grounds in accordance with the sentiments expressed by this Court in *Johnson.*

For the reasons I have expressed, I therefore dissent, joining my colleagues Long and Albin.

Justices LONG and ALBIN join in this opinion.

ALBIN, J., dissenting.

The right to trial by jury is an ancient and revered right, a right embodied in our State Constitution before there was a Federal Constitution, a right as old as the Magna Carta.[3] That right has been devised to us through the ages and finds its home in our

---

[3] *See N.J. Const. of 1776* art. XXII (stating "that the inestimable right of trial by jury shall remain confirmed as a part of the law of this Colony, without repeal, forever") (reproduced at *http://www.nj.gov/njfacts/ njdoc10a.htm* ); J. Kendall Few, 1 *In Defense of Trial by Jury* 10 (1993).

current New Jersey Constitution, which guarantees that the "right of trial by jury shall remain inviolate." *N.J. Const.* art. I, ¶ 9. The majority opinion strikes a blow to that right by diminishing the role and importance of the jury in our system of criminal justice and by ceding from the jury to the judge the relevant fact-finding power that determines the real-time length of a defendant's sentence. By radically altering the balance between the function of the jury and the judge, the majority opinion departs from this Court's previously held belief that "[t]he responsibility of the jury in the domain of factual findings" is "preeminent," and that in determining guilt or innocence, the jury "serves as the conscience of the community and the embodiment of the common sense and feelings reflective of society as a whole." *State v. Ingenito*, 87 *N.J.* 204, 211–12, 432 *A.2d* 912 (1981) (citations omitted). I, therefore, join with the thoughtful dissents of Justices Long and Zazzali and add these words to signal my concern about the path on which the Court now embarks.

One evening, Traci Stanton lost control of the Porsche she was driving, striking a tree off the side of the road and killing her sister-in-law, Nancy Smith, who was in the front passenger seat. The State claimed that Stanton recklessly operated the vehicle, causing Smith's death. Stanton was charged with vehicular homicide, *N.J.S.A.* 2C:11–5, a second-degree crime, and several motor vehicle offenses, including reckless driving, *N.J.S.A.* 39:4–96, and driving while intoxicated (DWI), *N.J.S.A.* 39:4–50. The vehicular homicide charge was tried to a jury and the motor vehicle charges to a Superior Court judge in one proceeding pursuant to *Rule* 3:15–3.

The State presented the same evidence to the jury with respect to the indictable and motor vehicle charges, including evidence that Stanton was intoxicated at the time of the accident. After the jury rendered a verdict of guilty on the vehicular homicide charge, the Superior Court judge sat in judgment on the motor vehicle charges and, without taking any additional evidence or testimony, found Stanton guilty of reckless driving and DWI. The judge's

finding of guilt on the DWI charge had grave implications beyond the penalty range for that motor vehicle offense. The judge sentenced Stanton to a three-year state prison term based on the jury's finding of vehicular homicide. The judge's verdict on the DWI charge, however, required the imposition of a mandatory minimum three-year state prison term on the vehicular homicide charge pursuant to *N.J.S.A.* 2C:11–5b(1). But for the DWI finding, Stanton would have been eligible for parole in nine months. *See N.J.S.A.* 30:4–123.51g. The judge's factual finding exposed Stanton to a real-time sentence four times greater than the exposure resulting from the jury's factual finding.

## I.

The New Jersey Constitution empowers this Court to promulgate rules governing the "practice and procedure" in the Superior Court. *N.J. Const.* art. VI, § 2, ¶ 3; *Winberry v. Salisbury,* 5 *N.J.* 240, 255, 74 *A.*2d 406 (establishing that Court's rule-making power, in matters of practice and procedure, is not subject to overriding legislation), *cert. denied,* 340 *U.S.* 877, 71 *S.Ct.* 123, 95 *L.Ed.* 638 (1950). In accordance with this authority, the Court enacted *Rule* 3:15–3, which provides that disorderly persons, petty disorderly, and motor vehicle complaints must be joined for trial with a criminal offense "based on the same conduct or arising from the same episode." *R.* 3:15–3(a)(1). Unlike disorderly persons or petty disorderly persons offenses, which are submitted to the jury if they are lesser-included offenses, *Rule* 3:15–3(a)(2) requires lesser-included motor vehicle offenses of a criminal complaint to be decided by the Superior Court judge "on the proofs adduced in the course of trial." *Rule* 3:15–3 is the codification of several decisions of this Court that I believe have mistakenly taken from the jury its rightful authority to decide lesser-included motor vehicle offenses arising from the same conduct of a criminal offense. *See State v. Muniz,* 118 *N.J.* 319, 571 *A.*2d 948 (1990); *State v. DeLuca,* 108 *N.J.* 98, 527 *A.*2d 1355, *cert. denied,* 484 *U.S.* 944, 108 *S.Ct.* 331, 98 *L.Ed.*2d 358 (1987). This rule is directly

implicated in this case because it was the judge's and not the jury's verdict on the DWI complaint that mandated a three-year period of parole ineligibility. This Court has the constitutional power, and responsibility, to make its procedural rules logical and consistent, and this case provides the opportunity to do so with respect to *Rule* 3:15–3. *State v. Clark,* 162 *N.J.* 201, 205–07, 744 *A.*2d 109 (2000) (stating that "the Court's authority to engage in rule making includes the exclusive power to establish or modify Court Rules through judicial decisions"); *George Siegler Co. v. Norton,* 8 *N.J.* 374, 381–83, 86 *A.*2d 8 (1952) (holding statute addressing procedural aspects of contributory negligence operated within field of Court's exclusive rule-making power and was superseded by Court's rules and, therefore, no longer effective).

There is no sound reason why a jury in a vehicular homicide case should not decide the lesser-included offenses of DWI and reckless driving. A jury is no less capable of rendering a decision on reckless driving and DWI charges than on criminal charges. Our constitutional jurisprudence recognizes both DWI and reckless driving as lesser-included offenses of vehicular homicide. A finding of guilt of DWI will bar a subsequent prosecution of vehicular homicide on double jeopardy grounds if the sole evidence supporting the element of recklessness is intoxication related to the DWI charge. *DeLuca, supra,* 108 *N.J.* at 109, 527 *A.*2d 1355. Likewise, a municipal court conviction of reckless driving, *N.J.S.A.* 39:4–96, will bar a later criminal trial for recklessly causing death arising from the same evidence. *State v. Dively,* 92 *N.J.* 573, 583, 458 *A.*2d 502 (1983).

Our law requires that lesser-included offenses be charged to a jury if a rational basis in the evidence supports the lesser charges. *State v. Choice,* 98 *N.J.* 295, 299, 486 *A.*2d 833 (1985). The principle of charging a jury with lesser-included offenses serves two important purposes. It protects the prosecution against an outright acquittal when an element of the greater charge is not proven, and it protects a defendant from conviction of the more serious charge when the jury is given an all-or-nothing choice.

*State v. Neal,* 229 *N.J.Super.* 28, 33, 550 *A.*2d 998 (App.Div.1988). Under this doctrine, no defendant should be acquitted or convicted of a particular crime merely because the jury was precluded from considering another charge that is rationally based on the record. No person should be found guilty of a more serious offense merely because a jury was denied the opportunity of finding guilt of a lesser offense. In short, a jury should be free to consider all lesser-included offenses that are reasonably related to the evidence and the crime charged. *N.J.S.A.* 2C:1–8(d), (e). In this case the motor vehicle DWI and reckless driving charges and the vehicular homicide charges arose from the same evidence. Yet, the current state of our law precludes the lesser-included offenses of DWI and reckless driving from being submitted to the jury. *Muniz, supra,* 118 *N.J.* at 332, 571 *A.*2d 948.

Disorderly persons, petty disorderly persons, and serious motor vehicle offenses are quasi-criminal offenses. A person charged with a quasi-criminal offense is entitled to fundamental due process protections, including the presumption of innocence, which requires the State to bear the burden of proving guilt beyond a reasonable doubt. *See State v. Garthe,* 145 *N.J.* 1, 8, 678 *A.*2d 153 (1996); *Dively, supra,* 92 *N.J.* at 585, 458 *A.*2d 502; *State v. Finamore,* 338 *N.J.Super.* 130, 138–39, 768 *A.*2d 248 (App.Div. 2001); *State v. Young,* 242 *N.J.Super.* 467, 473, 577 *A.*2d 520 (App.Div.1990).

Disorderly persons, petty disorderly persons, and motor vehicle offenses are all subject to the jurisdiction of the municipal court. Disorderly persons and petty disorderly persons offenses, however, may be submitted to the jury in criminal trials as lesser-included offenses, despite the general jurisdiction of the municipal court in such matters. *See N.J.S.A.* 2C:1–8(e); *R.* 3:15–3. *See also, e.g., DeLuca, supra,* 108 *N.J.* at 111, 527 *A.*2d 1355 (stating that "Superior Court may assert jurisdiction over non-indictable offenses when they are lesser included offenses of the indictables" for purpose of submitting disorderly persons charges to jury); *State v. Braxton,* 330 *N.J.Super.* 561, 563, 568, 750 *A.*2d 185

(App.Div.2000) (affirming conviction where defendant was acquitted of charged aggravated assault and convicted of lesser-included offense of disorderly persons simple assault); *State v. Green,* 318 *N.J.Super.* 361, 375, 724 *A.*2d 254 (App.Div.1999) (holding that failure to give lesser-included charge of simple assault as lesser-included offense of aggravated assault on police officer was reversible error), *aff'd,* 163 *N.J.* 140, 747 *A.*2d 1234 (2000); *State v. Lopez,* 160 *N.J.Super.* 30, 36, 388 *A.*2d 1273 (App.Div.1978) (finding that disorderly persons theft offense should have been given to jury as lesser-included offense of criminal charges).

The same principles that support submitting disorderly persons offenses to the jury as lesser-included offenses apply as well to serious motor vehicle charges, such as DWI and reckless driving. The penalties for a conviction of DWI, even for a first-time offender, are more severe than for a petty disorderly persons offense. *Compare N.J.S.A.* 39:4–50(a)(1) (providing that person who operates motor vehicle while intoxicated shall be subject to fines, suspension of license for not less than six months nor more than one year, "a period of detainment ... as prescribed by the program requirements of the Intoxicated Driver Resource Centers ... and, in the discretion of the court, a term of imprisonment of not more than 30 days"), *with N.J.S.A.* 2C:43–8 (stating that "person who has been convicted of a ... petty disorderly persons offense may be sentenced to imprisonment for a definite term which ... shall not exceed ... 30 days"). Penalties for a third DWI offense are even more severe, and include a minimum 180-day term of imprisonment. *N.J.S.A.* 39:4–50(a)(3). In its previous incarnations over the last century, DWI has been classified as a disorderly persons offense and a misdemeanor. *State v. Hamm,* 121 *N.J.* 109, 119, 577 *A.*2d 1259 (1990), *cert. denied,* 499 *U.S.* 947, 111 *S.Ct.* 1413, 113 *L.Ed.*2d 466 (1991). The nature of the offense and its relationship to the greater offense, not a classification by label, should govern whether the jury decides the issue. Notions of fairness, consistency in the fact-finding process, and respect for the jury as a truth-seeking body favor submitting DWI and

reckless driving charges to the jury along with the vehicular homicide charge.

The majority takes the position that where the State presents evidence to support different theories of recklessness in a vehicular homicide case, *i.e.*, intoxication and speeding, unanimity on any one theory is not necessary, so long as all twelve jurors agree that the defendant was reckless. *Ante* at 86, 820 *A.*2d at 644. Because the jury renders a general verdict, the theory upon which the verdict is based is not known. Therefore, it is conceivable that in a vehicular homicide case in which various theories are presented to prove recklessness, all twelve jurors may reject intoxication as the basis for finding recklessness while the judge will be allowed to make a finding of intoxication to render a DWI verdict. It is the potential for this kind of inconsistent result that undermines the integrity of dual fact-findings.

This Court's precedents have compelled bifurcated fact-findings between the judge and the jury in vehicular homicide cases. *Muniz, supra,* 118 *N.J.* at 331–32, 571 *A.*2d 948; *DeLuca, supra,* 108 *N.J.* at 111, 527 *A.*2d 1355. In *Dively, supra,* we recognized that a reckless driving or DWI charge prosecuted in municipal court could bar the later prosecution of a vehicular homicide charge on double jeopardy grounds. To avoid this unjust result, the Court issued a directive to the municipal courts to withhold action on motor vehicle charges related to a vehicular homicide until authorized by the county prosecutor. 92 *N.J.* at 586, 589–90, 458 *A.*2d 502. In *DeLuca, supra,* we concluded that if evidence of recklessness in a vehicular homicide prosecution were based *solely* on intoxication, double jeopardy would bar a subsequent DWI prosecution on the same evidence. 108 *N.J.* at 100, 527 *A.*2d 1355. To resolve double jeopardy concerns in the future, the *DeLuca* Court directed the Superior Court, pursuant to its constitutional powers, to assume jurisdiction of the related municipal court matters in vehicular homicide cases. In such cases the Superior Court judge presiding over the jury trial of the vehicular homicide case would sit as the trier of fact on the related motor vehicle

violation, such as DWI. 108 *N.J.* at 111, 527 *A.*2d 1355. *See also* *R.* 3:15-3.

In *Muniz, supra,* this Court reversed the Appellate Division, which had concluded that, under the common law, lesser-included motor vehicle charges must be submitted to the jury in a vehicular homicide case. The Court determined that although lesser-included motor vehicle offenses should be joined in the prosecution of death-by-auto cases, they should be decided by the judge, not the jury. 118 *N.J.* at 331-32, 335, 571 *A.*2d 948. The Court reasoned that the policies behind the Code of Criminal Justice and Title 39, which governs motor vehicle violations, did not require the submission of those lesser-included offenses to the jury. *Id.* at 331, 571 *A.*2d 948. To mitigate the all-or-nothing effect this might have on a jury deciding a vehicular homicide case, the Court instructed the trial courts to make the jury aware that the Superior Court would render a decision on the related motor vehicle charges. *Id.* at 332, 571 *A.*2d 948.

This Court, in *Muniz,* provided no satisfactory rationale to justify denying jury consideration of a DWI charge in a vehicular homicide case where intoxication is part of the State's proof of recklessness. There is no salutary purpose in the continued practice of two fact-findings, one by a jury and the other by a judge, in which both view the same evidence at the same trial. Had all the charges been submitted to the jury in this case, the constitutional issue, which now divides the Court, probably would have been avoided.

I do not suggest here that a DWI complaint that stands alone, one that is not joined with a criminal offense, should be tried to a jury. This matter, however, presents a different case. One of the State's theories in this vehicular homicide case was based on intoxication. The Superior Court judge charged the jury that it had to decide whether defendant "violated" the law "that a person may not operate a motor vehicle under the influence of intoxicating liquor," as well as other motor vehicle laws, in "deciding whether or not she drove recklessly." In essence, the jury was

told to decide the DWI matter, but not to give voice to its judgment on the DWI complaint, which was left to the court's determination. This, to me, is a process devoid of any sense.

Ultimately, any ruling of this Court must withstand the test of reason and experience. Adherence to a practice that does not advance any legitimate objective should be discarded in favor of one that does. Relevant motor vehicle charges that are lesser-included offenses of a vehicular homicide charge should be submitted to a jury.

## II.

I fully concur with the well-reasoned opinions of Justices Long and Zazzali. However, the importance of the right to trial by jury compels me to add these thoughts. In interpreting our State Constitution, particularly the "right of trial by jury shall remain inviolate" provision, which is textually different from its federal counterpart, a decision of the United States Supreme Court is *persuasive* authority only if it can *persuade* by force of reason, logic, and historical interpretation. If federal precedent is an aid in interpreting a state constitutional right, infusing the right with purpose and meaning in light of our traditions and values, then we should make use of it. Alternatively, we are not bound to take bad advice, and when our state's interests are not advanced by federal precedent, we must go our own way. Our state constitutional provisions need not be homogenized to fit within the interpretation of counterpart provisions of the Federal Constitution, particularly in this area where the United States Supreme Court's interpretation of its "trial by jury" provision has been muddled and inconsistent, and has barely obtained the support of a majority of that Court. *See State v. Hunt,* 91 *N.J.* 338, 356, 450 *A.*2d 952 (1982) (Pashman, J., concurring) (questioning presumption that uniformity in constitutional analysis is unqualified advantage).

Our Court should not "adopt federal constitutional interpretations for the New Jersey Constitution merely for the sake of consistency." *Id.* at 355, 450 *A.*2d 952 (Pashman, J., concurring).

The textual language of the federal and state jury trial provisions are different; the history and application of those clauses to our federal and state laws have been different;[4] the structure of the New Jersey Code of Criminal Justice and the Federal Sentencing Guidelines, and the roles that juries play in these distinct legislative schemes, are vastly different. The Federal Sentencing Guidelines leave many factual determinations to a judge that would be wholly unacceptable in our state system.[5]

The majority's decision, which gives judges free rein to make factual determinations within the statutory maximum, theoretically permits the complete restructuring of the New Jersey Code of Criminal Justice, transferring powers traditionally reposed in juries to judges. One example will make the point. Currently, a jury determines whether a theft is greater than $200, $7500, or $75,000 for the purpose of grading the offense and determining the range of sentence. *N.J.S.A.* 2C:20–2b(4). The logic of the Court's decision would allow the enactment of a statute limiting a jury to rendering a general verdict of theft with a maximum sentence of, say, twenty years. Under this construct, a judge would then make the factual determination as to the amount of the theft for the purpose of imposing a specific sentence within that range. This would be entirely contrary to our current law, and yet this potential scenario follows from the Court's decision.

---

[4] *See State v. Anderson,* 127 *N.J.* 191, 194, 603 *A.2d* 928 (1992) (declining to follow federal law and, relying on State Constitution, declaring unconstitutional statutory provision making materiality element of perjury question of law and holding that, as element of crime, materiality must be determined beyond reasonable doubt by jury).

[5] *Compare Edwards v. United States,* 523 *U.S.* 511, 513–14, 118 *S.Ct.* 1475, 1477, 140 *L.Ed.2d* 703, 708 (1998) (stating that Federal "Sentencing Guidelines instruct *the judge* ... to determine both the amount and the kind of 'controlled substances' for which a defendant should be held accountable—and then to impose a sentence that varies depending upon amount and kind"), *with N.J.S.A.* 2C:35–5c (stating that where degree of offense for manufacture, distribution, or possession with intent to manufacture or distribute controlled dangerous substance depends on quantity of substance, quantity shall be determined by trier of fact).

Our state is a separate and independent laboratory, a political experiment, in a larger federal system of states with varied customs, cultures, and values. *See Hunt, supra,* 91 *N.J.* at 356–57, 450 *A.*2d 952 (Pashman, J., concurring). Through the New Jersey Constitution, this Court is permitted to reject a federal "one-size-fits-all" approach to the interpretation of state constitutional rights. Our federal constitutional rights are a floor, a lowest common denominator, intended to apply to a diverse people spread over a geographical domain of fifty states. We can and should interpret our rights more expansively when it is in keeping with our special state interests.

We have no greater state interest than sustaining the right to trial by jury, ensuring the heritage that places great trust in the common wisdom of everyday men and women to make judgments on the most vital issues concerning their fellow citizens. Traci Stanton was entitled to have a jury decide the factual issue that now requires her to serve a three-year mandatory minimum jail term. By allowing a judge to make that critical finding of fact in this case, the Court has diminished one of our most important rights.

Justices LONG and ZAZZALI join in this opinion.

*For reversal and reinstatement*—Chief Justice PORITZ and Justices COLEMAN, VERNIERO and LaVECCHIA—4.

*Dissenting*—Justices LONG, ZAZZALI and ALBIN—3.